**Duane REPOSA, individually and as agent of Transit Homes of America, and Transit Homes of America, an Idaho corporation, Appellants (Defendants),**

v.

**Charles BUHLER and Carol Buhler, husband and wife, Appellees (Plaintiffs).**

No. 88–300.

Supreme Court of Wyoming.

March 10, 1989.

John A. Thomas of Phillips, Lancaster & Thomas, P.C., Evanston, for appellants.

Roger Cowan of Harris and Morton, P.C., Evanston, for appellees.

Before THOMAS, URBIGKIT, MACY and GOLDEN, JJ., and ROONEY, Retired J.

ROONEY, Retired Justice.

Appellant Transit Homes of America is in the business of transporting mobile homes in interstate commerce. Appellant Reposa is an owner-operator of a truck-tractor. He contracts with appellant Transit Homes of America to lease his truck-tractor to appellant Transit Homes of America and to operate it in transporting mobile homes as designated by appellant Transit Homes of America.

Appellees engaged appellant Transit Homes of America to transport their double-wide mobile home from Evanston, Wyoming to St. George, Utah. Appellant Reposa was designated by Transit Homes of America to do so. The mobile home was to be transported in two sections. Appellant Reposa completed the transportation of one section on February 12 and 13, 1988. On February 15, 1988, while transporting the second section, a heavy wind blew it over near Bluffdale, Utah. The "blow over" and subsequent efforts to clear the road completely destroyed the second section of the mobile home.

Appellees filed this action to recover damages resulting from the "blow over." The complaint contained two claims for relief: one premised on negligence, and one premised on breach of contract. Prior to trial, the parties stipulated to the existence of liability on both claims, and the trial was held only on the issue of the amount of damages. The trial court entered judgment in the amount of $31,368 with costs of $102.20 and with post-judgment interest.

Appellants word the issues on appeal:

"I. WHETHER THE JUDGMENT OF THE DISTRICT COURT AWARDING DAMAGES TO PLAINTIFFS IN THE AMOUNT OF $31,368.00 IS CLEARLY ERRONEOUS AND IS UNWARRANTED AS A MATTER OF LAW BECAUSE OF THE USE OF AN IMPROPER MEASURE OF DAMAGES."

Appellees word them:

"I. WHETHER THERE WAS SUFFICIENT EVIDENCE FROM WHICH THE COURT COULD DETERMINE FAIR MARKET VALUE OF THE MOBILE HOME.

"II. WHETHER PLAINTIFFS ARE ENTITLED TO RECOVER SPECIAL

DAMAGES IN ADDITION TO THE VALUE OF THE MOBILE HOME."

We reverse and remand.

The uncontradicted evidence was that the destroyed section of the mobile home could not be replaced, and that the remaining section had no value *as a mobile home.* Appellant Transit Homes of America presented testimony that the remaining section had the potential to be converted into that useful for an office or something similar. The judgment awarded possession and ownership of the remaining section to appellants. The monetary damage award was therefore based upon a total destruction of the mobile home as such.

The trial court did not set forth the particulars by which it arrived at the damage figure of $31,368. However, the court commented at trial that his notes reflected telephone charges to have been $168 "roughly,"[1] travel expenses to have been $144 "roughly,"[2] and lost wages to have been $108 for each ($216 for both).[3] He further commented at that time that $690 per month was a reasonable amount for alternate housing,[4] and he referred to the mobile home set-up charges as being $3,700. Subtracting these figures from the award of $31,368 leaves $23,000 as the amount allocated to the loss of the mobile home. Thus, the damage award consisted of the following:

| | |
|---|---|
| $23,000 | Loss of mobile home |
| 3,700 | Set up charges |
| 4,140 | Alternate housing |
| 144 | Travel expenses |
| 216 | Lost wages |
| 168 | Telephone charges |
| $31,368 | |

The parties failed to supply the trial court with any proper evidence from which it could determine the market value of the mobile home *at the time and place* of

destruction. Thus, the $23,000 allowed for such destruction cannot stand.

The measure of damages for tortious conversion or destruction of a chattel as set forth in Restatement, Second, Torts § 927 at 534 (1979) is:

"(1) When one is entitled to a judgment for the conversion of a chattel or the destruction or impairment of any legally protected interest in land or other thing, he may recover either

"(a) the value of the subject matter or of his interest in it at the time and place of the conversion, destruction or impairment; or

"(b) in the case of commodities of fluctuating value customarily traded on an exchange to which traders customarily resort, the highest replacement value of the commodity within a reasonable period during which he might have replaced it.

"(2) His damages also include:

"(a) the additional value of a chattel due to additions or improvements made by a converter not in good faith;

"(b) the amount of any further pecuniary loss of which the deprivation has been a legal cause;

"(c) interest from the time at which the value is fixed; and

"(d) compensation for the loss of use not otherwise compensated."

The measure of damages for breach of contract as set forth in Restatement, Second, Contracts § 347 at 112 (1981) is:

"Subject to the limitations stated in §§ 350–53, the injured party has a right to damages based on his expectation interest as measured by

"(a) the loss in the value to him of the other party's performance caused by its failure or deficiency, plus

---

1. The telephone charges were testified to be $168.35.

2. Exhibit .5 reflected $138.86 to have been the travel expenses.

3. Appellee Charles Buhler testified his lost wages to have been $108 (16 hours at $6.75 per hour). Appellee Carol Buhler testified her lost wages to have been $111.24 (18 hours at $6.18

per hour). The lost wages for both appellees were $219.24.

4. Six months of $690 per month results in $4,140 as an amount for alternate housing. Exhibit 9 reflects the monthly payment to be $627.57. Appellee Carol Buhler testified that insurance and costs increased the amount to $690.

"(b) any other loss, including incidental or consequential loss, caused by the breach, less

"(c) any cost or other loss that he has avoided by not having to perform."

The limitations stated in referenced §§ 350–53 are those relative to avoidance of loss by the injured party, unforeseeability of damages resulting from the breach, damages not established with reasonable certainty, and loss due to most types of emotional disturbances.

The general rule, in pertinent part, is stated in 22 Am.Jur.2d, Damages §§ 427, 429 and 430 at 512–14 (1988) (footnotes omitted):

"As a general rule, damages for taking, damaging, or destruction of personal property are measured by the difference in the property's market value immediately before and after the injury. If the item was wrongfully taken or totally destroyed, this 'decrease' in market value is, of course, the market value of the item at the time of the taking or destruction.

\*　　\*　　\*　　\*　　\*　　\*

"The ordinary and basic measure of damages \* \* \* to personal property is \* \* \*, in case of its destruction, its market value at the time of the loss. But since the market value test is, at best, a means of determining the loss suffered, it may be discarded if a more accurate test is applicable.

" \* \* \* Market value means, generally, the price for which an article is bought and sold, and is ordinarily best established by sales in the ordinary course of business. It is the price a willing seller would accept from a willing buyer. There must be a demand for the item in order for it to be said to have a market value; therefore, if there is no demand for a thing and no ability to sell it, then it cannot be said to have a market value. Retail market value is used if it is assumed that the plaintiff would replace the property.

\*　　\*　　\*　　\*　　\*　　\*

"Generally the value of personal property taken or destroyed is to be determined as of the time and place of its taking or destruction."

We have recognized market value as the ordinary measure of damages for loss of destruction of personal property. *Broyles v. Broyles*, 711 P.2d 1119 (Wyo. 1985); *D'Arge v. Davis*, 710 P.2d 830 (Wyo. 1985); *Redwine v. Fitzhugh*, 78 Wyo. 407, 329 P.2d 257, reh. denied, 78 Wyo. 407, 330 P.2d 112 (1958).

Damages must be proven with a reasonable degree of certainty so that the fact finder, in turn, can determine the amount with a measurable degree of certainty. Exact certainty of the amount of damages need not be proven, but remote, conjectural or speculative damages are not allowed. *Reiman Const. Co. v. Jerry Hiller Co.*, 709 P.2d 1271 (Wyo.1985); *Krist v. Aetna Casualty & Surety Co.*, 667 P.2d 665 (Wyo.1983); *Cates v. Barb*, 650 P.2d 1159 (Wyo.1982); *Chrysler Corp. v. Todorovich*, 580 P.2d 1123 (Wyo.1978); *Opheim v. United Mobile Homes, Inc.*, 511 P.2d 1289 (Wyo.1973); *Reeder Flying Service v. Crompton*, 470 P.2d 281 (Wyo.1970).

The evidence in this case attempted to establish the fair market value of the mobile home through comparable sales—a standard and usual method of doing so since it is in compliance with the definition of reasonable or fair market value, i.e., the price which the property will bring when offered for sale by an owner who is willing but under no obligation to sell to a buyer who is willing or desires to buy but is not compelled to do so. See *Wheatland Irrigation District v. McGuire*, 562 P.2d 287 (Wyo.1977).

However, there was no evidence of a *comparable sale*. There was no evidence as to value of the mobile home *at the time and place* of its destruction, and damages were not proved with a *reasonable degree of certainty*.

Appellees resided in St. George, Utah, where they owned a home subject to a mortgage. They proposed to purchase a mobile home and live in it on some nearby rural acreage. They purchased the mobile

home through Dennis Buhler, a cousin of appellee Charles Buhler, who was employed by Hoback Realty as a sales associate in Evanston, Wyoming. The purchase was made in Evanston, Wyoming on February 3, 1988 for $15,000. The seller was Green Tree Acceptance Corporation. It had repossessed the mobile home about two weeks before the sale.

In their testimony, neither appellee presented any evidence of the value of the mobile home—other than to recite the purchase price.

Dennis Buhler was the only witness to testify to such value. He gave an opinion that the fair market value of it was "20 to $25,000." Later, he testified on direct examination:

"Q. Okay. The fair market value that you just gave us, 22 to 25,000?

"A. Right. 22—I don't remember the exact—22 to 25, basically."

He testified that he fixed the value of the mobile home as in Evanston. There was testimony that the market value of mobile homes in Evanston was quite different from that in St. George and elsewhere.

In any event, an opinion as to the value of $20,000 to $25,000 is worthless as evidence of actual value. Such a large value span invites speculation. The opinion does not have a reasonable degree of certainty. Damages must be "proved with a reasonable degree of certainty." [5]

■ Added to the uncertain and speculative nature of Dennis Buhler's testimony, he did not make reference to the use of a single comparable *sale*. He made reference to having talked to some others about sales, and he introduced two exhibits, one containing a list of twenty-five mobile homes for sale by Green Tree Acceptance Corporation. The prices at which they were listed ranged from $7,400 to $28,900,

and the other contained a list of twenty-seven mobile homes for sale with prices listed from $8,000 to $47,000. List prices (offers) are not sales.

"As a general rule, evidence of mere offers to buy or sell personal property is not competent to show the value of such property. Although market value may be determined by actual sales, it may not ordinarily be determined by asking prices. However, in a market regularly attended by buyers and sellers, an offer to buy or sell an article of recognized uniform character, constantly bought and sold in that market so as to have a place upon the daily price current lists, may serve to show the market value of that article."

29 Am.Jur.2d, Evidence § 389 at 441 (1967) (footnotes omitted).[6]

The fact that the destroyed mobile home, as testified by Dennis Buhler, was listed by Green Tree Acceptance Corporation at $24,000 or $25,000, but was reduced in price during negotiations with Dennis Buhler to "around" $20,000, and then finally an offer for $15,000 was accepted, indicates the fallacy of considering list prices instead of sales as evidence of fair market value.

Dennis Buhler characterized the $15,000 sale of the destroyed mobile home as a "distress" sale because it had been repossessed by Green Tree Acceptance Corporation. If it had been sold at a foreclosure sale wherein the sales price would effect a deficiency judgment, it could be classified as a distress sale. In this instance, there was no evidence that Green Tree Acceptance Corporation was "under an obligation" to sell. It is obvious that Green Tree Acceptance Corporation is in the business of financing mobile homes and regularly sells repossessed ones in its normal course of business.

---

5. This situation is distinguished from the situation in which evidence is received from two or more sources of different value. The fact finder can then fix the award within the parameters of that evidence. If there is to be speculation, it must be by the fact finder within such parameters and not by a single witness setting such parameters.

6. That said hereafter is with reference to the particular facts of this case, to which the first two sentences of the quotation apply. It is not with reference to circumstances such as referred to in the last sentence of the quotation.

■ The purchase price paid by appellees for the destroyed mobile home was at a time near enough to its destruction to have been evidence of its value at that time. However, there was no evidence relative to the purchase price to make possible its use for a nonspeculative determination of the value of the mobile home at *the place of its destruction*. Without such evidence, the sale was insufficient to be considered in fixing value.

Evidence of value was not otherwise presented at trial. In the usual case, testimony is given by an expert witness as to his opinion of the fair market value of the property—giving a figure that is sufficiently exact and certain to obviate speculation or conjecture in applying the figure to the value of the property. He then supports his opinion by reference to *sales*. Since it is rare that there are sales of identical properties under identical conditions, the witness' expertise comes into play.[7] He uses it in making adjustments to the individual sales to make them comparable to the value of the property in question. The adjustments are with reference to the elements necessary to make the status of such sale comparable to that of the subject property, e.g., time of sale, place of sale, differences in the properties (age, condition, composition, wear and tear, etc.). None of this supporting testimony exists in this instance.

Of particular importance is the failure to have evidence of value at the place of destruction—Bluffdale, Utah, a place between Salt Lake City, Utah and Provo, Utah. There was no evidence of comparable sales in that area, or of adjustments to sales in other areas to make them comparable to value in that area. There was no basis on which damages could be properly computed.[8] The question is not one of sufficiency of the evidence but is if there was any evidence at all.

■ Accordingly, we must reverse the holding of the trial court. Normally, the reversal would leave appellees without further redress. Ordinarily, the burden is upon one seeking more than nominal damages to prove his damages as part of his claim during trial. *State ex rel. Scholl v. Anselmi*, 640 P.2d 746 (Wyo.1982), cert. denied, 459 U.S. 805, 103 S.Ct. 28, 74 L.Ed. 2d 43 (1982); *Downing v. Stiles*, 635 P.2d 808 (Wyo.1981); *Western National Bank of Lovell v. Moncur*, 624 P.2d 765 (Wyo. 1981).

In this case, there has been not only a stipulation acknowledging liability, but there was testimony that appellant Transit Homes of America recognized the responsibility to respond with payment of damages on the claim for such—the argument being with regard to the amount of damages. Under these circumstances, it is proper to remand the case for a new trial on the issue of damages, in which trial the parties can assist the trial court by submitting proper evidence from which the amount of damages can be ascertained.

■ For this purpose and as assistance to the trial court, we note the following with reference to the issues presented to us in connection with the damage award for other than the loss of the mobile home. The set-up charge of $3,700 is the amount appellees were to pay to appellants for transportation of the mobile home and setting it up "ready to move in." It has not been paid. Since the service was not performed by appellants, payment is unnecessary. In any event, it would be useless to have appellees pay the $3,700 and then include the requirement for appellants to pay it back. It is improper to require appellants to reimburse appellees for a consideration which appellees never paid and appellants never received. The $3,700 should not have been included in the judgment award.

---

7. If the evidence were to be limited to sales lists, classified advertisements, N.A.D.A. guides or other forms of offers, any lay person could introduce them into evidence and expert testimony would be unnecessary.

8. There are other methods by which fair market value can be established, but the comparable sales method presented through an expert witness was the method undertaken in this case.

The $4,140 alternate housing award represents the amount appellees were obligated to pay on the loan secured by the house in which they were living for six months after they could have been living in the mobile home. Appellees testified that they owned a house in St. George, Utah which had been mortgaged under a Veteran's Administration guaranty; that the last payment was made in December 1987; that the balance of the mortgage debt at that time was $57,817.80; that they did not know if there was a provision for deficiency judgment in the mortgage or trust deed; and that they intended to sell the house when they moved into the mobile home. There was no evidence that a sale was attempted or possible. Since there was no evidence that appellees would have been relieved of the obligation to pay the $690 each month on the mortgage debt after moving to the mobile home, it cannot be determined that inability to move to the mobile home caused their obligation to continue the payments on the mortgage debt—especially when the payments were delinquent and there was no evidence that they would be liable for a deficiency judgment upon foreclosure. The $4,140 should not have been included in the judgment award.

The $144 travel expenses and the $168 in lost wages were testified to have occurred on a trip to Richfield, Utah and Rock Springs, Wyoming to look at one mobile home in Richfield and two mobile homes in Rock Springs from which a replacement for the one destroyed might be chosen. The trip was made on "instructions from somebody in Transit Homes to go look for a replacement." Under such conditions, the expenses for the trip were properly allowed as damages.

The $168 telephone charges were testified to as "relative to locating an alternate mobile home." They were properly allowed as a reasonable effort to mitigate damages. However, $18.99 of these charges were before the "blow over" and could not be for the purpose of "locating an alternate mobile home." Charges in the amount of $42.12 were incurred after the complaint was filed and, thus, after the effort to locate an alternate mobile home was abandoned. The allowable telephone charges should be $168.35 less $61.11, or $107.24.

REVERSED AND REMANDED.