**ZENITH DRILLING CORPORATION, Plaintiff–Appellee/Cross–Appellant,**

**v.**

**INTERNORTH, INC. and Belnorth Petroleum Corporation, Defendants–Appellants/Cross–Appellees.**

**Nos. 86–1355, 86–1436.**

United States Court of Appeals, Tenth Circuit.

March 10, 1989.

---

Burck Bailey (John Joseph Snider and David L. Kearney, also of Fellers, Snider, Blankenship, Bailey & Tippens, with him on the briefs), Oklahoma City, Okl., for Inter-North, Inc. and BelNorth Petroleum Corp.

Gary W. Davis (Denise Cotter Villani, also of Crowe & Dunlevy, with him on the brief), Oklahoma City, Okl., for Zenith Drilling Corp.

Before LOGAN, BARRETT and MOORE, Circuit Judges.

LOGAN, Circuit Judge.

This diversity action arises out of a contractual relationship between Zenith Drilling Corporation (Zenith), a contractor that leases oil rigs, and InterNorth, Inc. and BelNorth Petroleum Corporation (collectively InterNorth), two oil exploration companies. The district court granted summary judgment for Zenith on its claim for breach of contract and awarded damages of $6,014,131.47, plus post-judgment interest and costs. It granted summary judgment for InterNorth, however, on Zenith's claim for punitive damages. Both appeal.

In 1981, InterNorth entered into separate two-year contracts with Zenith for the exclusive use of Zenith's drilling rigs numbers 5 and 9. A dayrate charge of $7,800 and $8,200 respectively was provided for each day that a rig was in use and a standby charge, equal to the dayrate, would be made for each day a rig was not used. By mid–1982, oil prices had taken a nosedive, which resulted in significantly reduced demand for InterNorth's services. Thus, the rigs InterNorth had leased from Zenith were idle much of the time; yet, large standby charges still accrued.

By a "Letter Agreement" (Agreement) dated September 27, 1983, the parties agreed to reduce both the dayrate and standby charges for the two rigs, to extend the lease term to allow InterNorth more time to cover Zenith's costs plus a stated profit margin on the two rigs, to allow other exploration companies to lease the two formerly exclusive rigs, and to credit InterNorth's payments for use of other Zenith rigs against InterNorth's obligations on the two rigs of the original contracts. In addition, the parties agreed that InterNorth would not be liable for standby charges when the rigs were leased to another company.

In October 1984, Zenith invoiced InterNorth for standby charges covering the period from September 1983 through September 1984, and in November 1984 invoiced InterNorth for the month of October. Zenith had, before this time, billed InterNorth for dayrate charges and apparently all invoices were timely paid. InterNorth, however, failed to pay the standby charges, which were calculated in accordance with the Agreement. InterNorth does not contest its liability for the standby charges or that it had not paid the invoices by their due dates.

In February 1985, Zenith notified InterNorth that it had decided to rescind the Agreement, and in March it sued InterNorth under the 1981 contracts. Zenith alleged that it was entitled to do so because InterNorth's failure to pay the standby charges constituted a material breach of the Agreement. Immediately after suit had been threatened, InterNorth paid Zenith for all the invoiced standby charges, plus 1½% interest per month that the payments were overdue. Zenith returned the check uncashed. It later did accept payment, reserving its rights in this suit.

The district court granted Zenith summary judgment on the breach of contract claim. The court found that the Agreement merely conditionally modified the original contracts, displacing them only if InterNorth fully performed under the Agreement. The court then found that InterNorth committed a material breach of the Agreement, and by necessary implication from its holding, a material breach of the 1981 contracts, when it failed to pay the invoiced standby charges. Thus, Zenith was entitled to rescind the Agreement and obtain damages calculated under the original contracts. The court denied Zenith punitive damages.

The parties agree that Oklahoma law applies in this case. We consider on appeal the district court's construction of the Agreement, whether InterNorth committed a material breach, and Zenith's entitlement to punitive damages.

I

To support a grant of summary judgment in a case such as that before us, in which the standard of proof is preponderance of evidence, we must conclude that the evidence before the court would not permit a reasonable jury to find for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986); *Kaiser–Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 566 (10th Cir. 1989). A nonmovant's pleadings alone do not create an issue of material fact if the movant has tendered affidavits contrary to those pleadings and the nonmovant has not challenged the affidavits with evidence of its own. *Nichols v. United States*, 796 F.2d 361, 365 (10th Cir. 1986).

InterNorth argues that the Agreement amended the earlier contracts, and thus Zenith cannot rescind the Agreement without voiding the 1981 contracts. Zenith, on the other hand, asserts that the Agreement was an executory accord, and when InterNorth failed to comply with its terms, Zenith could rescind the Agreement and sue under the earlier contracts. The district court concluded that the Agreement was clear and unambiguous and proceeded to interpret it without the aid of a jury. *See Devine v. Ladd Petroleum Corp.*, 805 F.2d 348, 349 & n. 1 (10th Cir.1986) (ambiguity is a question of law); *State ex rel. Comm'rs of Land Office v. Butler*, 753 P.2d 1334, 1336 (Okla.1987) (ambiguity is question of

law and court may interpret unambiguous contract without aid of jury), *cert. denied,* —— U.S. ——, 109 S.Ct. 557, 102 L.Ed.2d 583 (1988). It held that the Agreement conditionally modified the 1981 contracts, and therefore, InterNorth's "underlying obligations expired *only* if [it] performed in accordance with the Agreement." I R.Doc. 59 at 3 (emphasis in original).

■■■■ An executory accord is an agreement for the discharge of an existing claim by a substituted performance, but one in which the extinguishment of the prior obligation is conditioned upon the performance of the accord. *See Coffeyville State Bank v. Lembeck,* 227 Kan. 857, 610 P.2d 616, 618–19 (1980). Incomplete performance or nonperformance of an accord does not discharge the original contractual obligations. *See, e.g., id.* 610 P.2d at 619; *Walker v. Rocky Mountain Recreation Corp.,* 29 Utah 2d 274, 508 P.2d 538, 542 (1973); *Hinkle v. Basic Chem. Corp.,* 163 Colo. 408, 431 P.2d 14, 16 (1967); A. Corbin, *Corbin on Contracts* § 1274 (1962); *Restatement (Second) of Contracts* § 281 (1981) [hereinafter *Restatement* ]. We do not understand Oklahoma law to be to the contrary. *See Houston Bros. v. Wagner,* 28 Okla. 367, 114 P. 1106, 1107–08 (1911). Here, the words used in the Agreement indicate that the parties only intended to release InterNorth from its obligations under the original contracts if it fully complied with the Agreement's terms:

> "It is agreed that all of InterNorth's obligations under the referenced contracts will be fulfilled by use of these two rigs by InterNorth and Nortex at a reduced daywork rate and by extending the joint term.
>
> . . . .
>
> Upon completion of the extended term as contemplated above, InterNorth shall have no future obligation or liability to Zenith under the above referenced contracts."

I R.Doc. 24 exh. A ¶¶ 2, 5. This language plainly shows that InterNorth was to be released from its original obligations only if it fully performed under the accord, and neither the bald statement in the Agreement that it will serve as an "amendment" to the original contracts, nor the authorities cited by InterNorth dictate a contrary conclusion. We hold that the district court properly treated the Agreement as an executory accord which did not extinguish InterNorth's prior obligations unless its terms were satisfied.

## II

■■■ The district court determined that InterNorth materially breached the Agreement and, by necessary implication, also determined that InterNorth materially breached the 1981 contracts. It therefore awarded Zenith damages under the earlier contracts. I R.Doc. 59 at 6. InterNorth argues that whether it committed a material breach is a question of fact not susceptible to summary resolution. Zenith, on the other hand, asserts that uncontroverted evidence shows InterNorth intentionally breached a material obligation, thus entitling Zenith to damages calculated under the original contracts.

There is no question that InterNorth breached the Agreement, and therefore the original contracts, when it intentionally failed to pay the invoiced standby charges within the thirty-day grace period; the only question is whether that breach was material. Although the materiality of a contractual breach usually is a question of fact for the jury, *cf. Continental Ill. Nat'l Bank & Trust Co. v. Sahadi,* 706 F.2d 193, 196 (7th Cir.1983), in other contexts this court has stated that "materiality is a mixed question of law and fact that can be decided as a matter of law if reasonable minds could not differ on the question." *Long v. Insurance Co. of N. Am.,* 670 F.2d 930, 934 (10th Cir.1982); *see also Suggs v. State Farm Fire & Casualty Co.,* 833 F.2d 883, 888 (10th Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 1732, 100 L.Ed.2d 196 (1988). The Oklahoma Supreme Court has stated that a material breach justifying recission or termination of a contract occurs "when such failure defeats the object of the contract, or when it concerns a matter of such importance that the contract would not have been made if default in that particular

had been expected or contemplated." *Davis v. Gwaltney*, 291 P.2d 820, 823 (Okla.1955) (citations omitted); *G.A. Nichols, Inc. v. Hainey*, 190 Okla. 242, 122 P.2d 809, 811 (1942). We recognize that many factors may be relevant in determining materiality, *see Restatement* § 241, but this alone does not preclude summary resolution in an appropriate case.

Under Oklahoma's materiality standard, the district court correctly granted summary judgment for Zenith by concluding that InterNorth materially breached the Agreement and original contracts when it refused to pay invoiced standby charges. Undeniably, standby charges were a material element of the contracts and Zenith would not have contracted or consented to the Agreement without them. Without standby charges, InterNorth would have had no real continuing obligations under the contracts; the agreements merely would have set a price for use of the rigs whenever InterNorth decided to use them. Zenith purchased a new rig especially for the use of InterNorth under the contracts, and clearly did not intend to accept the risk of having a new, unutilized rig, without any enforceable obligation on InterNorth to use or pay.

InterNorth makes several arguments that delay in payment of the standby charges should not be considered a material breach: that Zenith had never invoiced InterNorth for standby charges before October 1984; that InterNorth was not notified that a delay in payment would be considered a contract breach; and that the 1½% per month late payment charge provided in the original contracts was intended as Zenith's sole remedy for delays in payment. Before October 1984, however, very little in standby charges had accrued, and it was by agreement of the parties that no standby charges were invoiced. The letter accompanying the October invoice explicitly stated that monthly charges would be made and invoiced thereafter. Zenith made clear to InterNorth in January 1985, approximately a month before it rescinded the Agreement, that it would not tolerate delay in the payments any longer. The 1½% late payment penalty provision indicates that an isolated *delayed* payment may not be a material breach, to be sure. But that does not imply that the late payment charge is the exclusive remedy for prolonged refusal to pay. InterNorth never paid the charges until after Zenith already had rescinded the Agreement and alleged a material breach, and even then the invoiced payments were eighty-eight and fifty-eight days late, respectively.

InterNorth's complete failure to pay until Zenith rescinded was not caused by inadvertence or financial inability, but was a deliberate and calculated negotiating tactic. Undisputed evidence shows that InterNorth used nonpayment in an attempt to force Zenith to renegotiate a second, even more lenient agreement with InterNorth. III R. 140, 178–80 (deposition of Gary L. Thomas); VIII R. 66–68, 74–75, 158–59 (deposition of Mark G. Papa); VI R. 57–58 (deposition of Robert M. Chiste); Plaintiff's Exhibit 20 at 3 (InterNorth memorandum from Mark G. Papa to R.A. Belfer). InterNorth argues that it refused to pay the standby charges only because they might have been compromised as a part of negotiations then going on between the parties, and if the negotiations faltered, InterNorth would have made payment at that time. This excuse for nonpayment is refuted by InterNorth's own officials, who indicated that the corporate purpose for not paying the charges was to force Zenith to renegotiate.

InterNorth's willful breach of its contractual obligations, despite its ability to perform, *see* VI R. 81–82 (deposition of Robert M. Chiste); III R. 171 (deposition of Gary L. Thomas), coupled with the important part standby charges played in the parties' contracts, convinces us that no dispute of material fact is presented in this case and that InterNorth, as a matter of law, committed a material breach of the Agreement and original contracts. The situation is essentially no different than when a purchaser of gas under a take or pay contract, thinking it has the lessor in a financial bind, refuses either to take gas or to pay for gas not taken as a tactic to force a new, more favorable purchase contract. *See*

*Kaiser–Francis Oil Co. v. Producers Gas Company,* 870 F.2d 563, 569–70 (10th Cir.1989).

Because InterNorth's deliberate refusal to pay invoiced standby charges constitutes nonperformance and a material breach of the executory accord, the Agreement does not displace the terms of the original contracts. And because the same refusal to pay also is a material breach of the two original contracts, InterNorth is liable for damages, calculated under those original contracts. The district court properly awarded summary judgment to Zenith on its breach of contract claim.

### III

Generally, Oklahoma law prohibits the award of punitive damages in a contract action, Okla.Stat. tit. 23, § 9(A), and the district court denied them in the instant case. The Oklahoma courts have allowed punitives, however, even when the parties' relationship basically is contractual, if the breaching party's acts constitute "an independent, willful tort." *Z.D. Howard Co. v. Cartwright,* 537 P.2d 345, 347 (Okla.1975); *see also Woods Petroleum Corp. v. Delhi Gas Pipeline Corp.,* 700 P.2d 1023, 1027 (Okla.Ct.App.1983).

Zenith, cross-appealing, argues that it at least raised an issue of material fact regarding whether it should receive punitive damages. It asserts that InterNorth committed an independent, willful tort when it intentionally breached the contract and tried to harm Zenith, thereby violating the duty of good faith that Oklahoma law implies in every contract. *See Hall v. Farmers Ins. Exch.,* 713 P.2d 1027, 1029–30 (Okla.1985); *Oklahoma Natural Gas. Co. v. Pack,* 186 Okla. 330, 97 P.2d 768, 770 (1939).

We reject this argument and affirm the district court's denial of punitive damages. Count I of Zenith's complaint asserts only breach of contract. Count II asserts that InterNorth committed a tort, but only to support its punitive damages claim. Zenith does not argue that actual damages are due for commission of that tort. This court has held, interpreting Oklahoma law, that a breach of contract alone cannot support an award of punitive damages; the plaintiff must recover damages for a tort before recovering punitive damages. *Norman's Heritage Real Estate Co. v. Aetna Casualty & Sur. Co.,* 727 F.2d 911, 916 (10th Cir.1984). The Oklahoma Supreme Court has cautioned against allowing punitive damages in a suit for breach of contract when the plaintiff has alleged fraud or malice merely to support a claim for punitives. *Burton v. Juzwik,* 524 P.2d 16, 19–20 (Okla.1974). The award of exemplary damages in such a case would nullify the statutory prohibition in Okla.Stat. tit. 23, § 9(A). *Id.* Thus, the district court correctly granted summary judgment for InterNorth on Zenith's punitive damages claim.

AFFIRMED.