**JBC OF WYOMING CORP.,
a corporation, Appellant
(Plaintiff),**

v.

**CITY OF CHEYENNE, Wyoming; and
Cheyenne Board of Public Utilities,
Appellees (Defendants).**

No. 92–32.

Supreme Court of Wyoming.

Dec. 21, 1992.

Bruce A. Salzburg of Herschler, Freudenthal, Salzburg, Bonds & Rideout, Cheyenne, and Stephen S. Dunham (argued), and Roxanne Jensen of Morrison & Foerster, Denver, CO, for appellant.

J. Kent Rutledge (argued), of Lathrop & Rutledge, Cheyenne, for appellees.

Before MACY, C.J., and THOMAS, CARDINE, URBIGKIT * and GOLDEN, JJ.

CARDINE, Justice.

An arbitrator awarded JBC consequential damages equal to thirty percent (30%) per year of the unpaid amounts due JBC in its contractual dispute with the defendants City of Cheyenne (City) and Cheyenne Board of Public Utilities (Board). This amount was to be paid to JBC in addition to other awards in its favor, and interest due on them. An appeal to the district court resulted in reversal of the consequential damage award. JBC of Wyoming Corporation (JBC) now appeals the trial court's reversal of the consequential damage award.

Because the arbitrator abused his discretion in making this consequential damage award, we affirm the trial court's order.

JBC states the issue before us as follows:

> Did the district court err when it found that the neutral arbitrator exceeded his authority by awarding compensatory damages for appellees' failure to pay monies owed to appellant?

This action arises out of the construction of the Stage II Little Snake Diversion Pipeline Project (Project) near Encampment, Wyoming. JBC was the general contractor for, and the City the owner of, the Project. The Project involved the construction of 16 miles of roads, 103 stream diversion and collection structures, and 120,000 feet of pipeline in the mountains of the Medicine Bow National Forest. The contract price was approximately $20,485,000.00. The contract contained a provision requiring the parties to negotiate any disputes between them under the contract prior to commencing any litigation.

As the Project proceeded, problems developed with one of JBC's subcontractors, Varra Companies, Inc. (Varra). JBC brought suit against Varra after Varra allegedly "walked off the job." This suit eventually expanded to include numerous other issues and to engulf JBC, Varra, the Board, Banner Associates (the architect on the Project), and various surety companies in costly litigation in state and federal courts, which lasted until a settlement was reached on the eve of trial. As part of the settlement process, and in view of their painful and expensive experience with the court system, JBC and the appellees entered into an agreement to submit any remaining and future contractual disputes between them to binding arbitration.

The Submission Agreement required the appellees and JBC each to appoint a representative with full settlement authority. If the representatives failed to agree on any issue, they were to appoint a neutral third party to decide it. Subsequent to execution of the Submission Agreement, numerous problems in addition to those already in controversy arose with the Project. The most serious of these concerned the 66- and 72-inch pipe installed below ground at the Project site. The pipe had become defective, and repairs estimated at over $4.5 million were needed.

On July 10, 1987, JBC filed suit in state district court against the City, the Board, and other named defendants, seeking damages for the pipe design failures, structural embankment failures, water quality problems, and payment of retainage due from the City and Board under the contract. The complaint stated claims in both tort and contract. The City and the Board responded with a motion to dismiss and application for order of arbitration. On October 20, 1987, the trial court determined that JBC's claims against the City and the Board were subject to the previously-executed Submission Agreement. It stayed the suit as to the City and Board and ordered JBC to submit its claims against them to arbitration under the Agreement.

Meanwhile, by the end of August 1987, the Board had suspended progress payments under the contract to JBC. The Board claimed this suspension was justified under its contractual right to "nullify" previous payments because of the construction defects. On September 4, 1987, JBC re-

---

* Chief Justice at time of oral argument.

sponded by notifying the Board that it was terminating the contract for nonpayment. After this notice of termination, JBC proceeded to complete the Project at its own expense.

On October 28, 1987, JBC sent the Board a list of claims it intended to submit to the arbitration process. These claims were divided into two categories: "Alternate A" and "Alternate B." Alternate A was a total cost claim under the contract for the expenses of the work plus a reasonable profit. JBC estimated the amount due under Alternate A at $14.5 million. Alternate B consisted of a number of individual claims totalling $8.25 million.

JBC initially presented a number of the individual claims under Alternate B for resolution through the arbitration process, and some of them were resolved. However, JBC became dissatisfied with the Board's nonpayment of these claims after resolution and with its continued withholding of nullification payments, so on March 3, 1989, JBC presented its "total cost claim" for $19,895,133.00 to Warren Hunter, the neutral arbitrator. The claim was based on a provision of the contract which allowed the contractor, in the event of nonpayment, to terminate the agreement and to receive payment for "all work executed and any expense sustained plus a reasonable profit." In a footnote to its claim, JBC stated: "If this claim is granted and total cost awarded, it will cover and dispose of all JBC's other claims."

On May 18, 1989, Hunter ruled that JBC was not entitled to exercise the total cost remedy provided for in the parties' contract. However, because of the "serious effects" of the Owner's withholding of funds from JBC, Hunter ruled that:

A. The Owner must pay JBC an additional 30% per year (over and above the interest allowed in Paragraph 101.16.04) on all funds found to have been improperly withheld from the Contractor. This ruling will also apply to any funds not promptly paid the Contractor because of the Owner's purported budgetary problems. The additional dollar amount will be calculated starting on the date the monies were originally due and continue until paid in full.

B. JBC retains the right to pursue any or all of their claims that have not been settled.

In a letter to the parties dated June 28, 1989, Hunter further explained this award as follows:

2. Even though I did not feel JBC was entitled to the complete Total Cost Claim * * *, I did feel they were entitled to compensatory damages for the effects on their company that resulted from the monies wrongfully withheld by the Board. My reasoning for this was explained throughout the decision.

3. The 30% *is not* interest. It is just the method I chose to determine the compensatory damages.

4. The 30% was awarded as fair and equitable compensatory damages to JBC for the damages they suffered because of the Board wrongfully withholding payments due JBC. Because I did not have, nor would the total information be available until all claims were settled, all of the information needed to determine a fixed amount for compensatory damages, I chose the percentage method because it could easily be applied to the present known monies and also to any future monies that may apply. [emphasis in original]

The City and Board moved the trial court for an order correcting or vacating Hunter's award of 30% compensatory damages. They also moved to disqualify Hunter as the neutral arbitrator, on the grounds that he was biased toward JBC. Angered by their suggestion of bias, Hunter resigned as the neutral arbitrator on July 16, 1989. The trial court entered an order holding the motion to correct the award in abeyance. It appointed a new arbitrator, Stuart Bartholomew, to hear JBC's remaining individual claims.

After JBC's substantive claims were heard and decided, and only the interest amount remained to be considered, JBC petitioned the court, with extensive briefs and exhibits, to confirm the 30% compensatory damage award and to remand for a

calculation of damages. The defendants responded by opposing this motion and again moving that the 30% arbitration award be vacated. On December 19, 1991, the trial court ruled that Hunter exceeded his authority in making the 30% award. It vacated the award. After the trial court certified that there was no just cause for delay pursuant to W.R.C.P. 54(b), JBC took timely appeal to this court from the trial court's order vacating the arbitrator's award.

*Standard of Review*

■ We have located no cases setting out the standard of review to be followed when evaluating an order of the trial court which vacates an arbitration award. Our prior cases do not make clear whether we owe any deference to the trial court's determination that grounds existed for vacating the award.

■ The trial court's power to set aside an arbitration award seems best analogized for standard of review purposes to its power to grant judgment notwithstanding a jury's verdict (JNOV). *See* W.R.C.P. 50(b). When reviewing the trial court's entry of a JNOV, we "undertake a full review of the record without deference to the views of the trial court." *Inter–Mountain Threading, Inc. v. Baker Hughes Tubular Serv., Inc.*, 812 P.2d 555, 558 (Wyo. 1991). Like the question of whether a JNOV should be entered, the issue of whether the arbitrator exceeded his authority is primarily a question of law. We owe no deference to the trial court's determination of questions of law. *Cf. Union Pacific R.R. Co. v. State Bd. of Equalization*, 802 P.2d 856, 859 (Wyo.1990) (no deference to trial court's determination of questions of law in agency appeal).

■ In reviewing the record below, we are mindful that the grounds for vacating or modifying an arbitrator's award remain narrow in scope. Because of its voluntary, informal nature, awards made in arbitration are subject to less intensive scrutiny than are, for example, the orders of administrative agencies. *See* W.S. 16–3–114. The reviewing court must observe the prin-

ciple that arbitrators are free to fashion forms of relief which could not be ordered by a court in law or equity. W.S. 1–36–114(a)(v). Furthermore, we are reluctant to disturb an arbitrator's just solution to a controversy, even if it differs from the resolution we might have chosen, had we been in the arbitrator's place. *See Matter of Town of Greybull*, 560 P.2d 1172, 1175 (Wyo.1977). As a voluntary method for resolution of disputes, arbitration is embedded in the public policy of Wyoming and is favored by this court. *T & M Properties v. ZVFK Architects and Planners*, 661 P.2d 1040, 1043 (Wyo.1983).

*Did the Arbitrator Exceed His Authority?*

Wyoming Statute 1–36–114(a) requires the trial court upon application to vacate an arbitrator's award where:

(i) The award was procured by corruption, fraud or other undue means;

(ii) There was evident partiality by an arbitrator appointed as a neutral, corruption of any of the arbitrators or misconduct prejudicing the rights of any party;

(iii) *The arbitrators exceeded their powers;*

(iv) The arbitrators refused to postpone the hearing upon sufficient cause being shown, refused to hear evidence material to the controversy or otherwise conducted the hearing as to prejudice substantially the rights of a party; or

(v) There was no arbitration agreement, the issue was not adversely determined by a court as provided by law and the applicant did not participate in the arbitration hearing without raising the objection. The fact that the relief was such that it could not or would not be granted by a court of law or equity is not a ground for vacating or refusing to confirm the award. [emphasis added]

■ When considering a motion to vacate, the trial court is not limited to the grounds listed in the statute but may also vacate the award for, among other reasons, "fraud, corruption, behavior beyond the bounds of natural justice, excess of authority, or a manifest mistake of fact or law

appearing upon the face of the award." *Texas West Oil and Gas Corp. v. Fitzgerald,* 726 P.2d 1056, 1062 (Wyo.1986), *quoting Riverton Valley Elec. Ass'n v. Pacific Power and Light Co.,* 391 P.2d 489, 500 (Wyo.1964).

### a. Double Recovery

The trial court found that if the 30% compensatory damage award were allowed to stand in addition to recovery for the individual claims, JBC would receive a double recovery. The consequential damage award was a substitute for the total cost claim, which in turn was an alternative remedy to JBC's individual claims. JBC had already submitted and received payment for many of these individual claims. Since JBC is not entitled to double recovery for its injuries, the trial court held that the consequential damage award must be reversed.

 Consequential damages, of course, are not necessarily double recovery when awarded for foreseeable harm which differs from that compensated by direct · damages. The damages awarded in an action for breach of contract are designed to put the plaintiff in the same position as if the contract had been performed, less proper deductions. *Robert W. Anderson Housewrecking and Excavating, Inc. v. Board of Trustees, Sch. Dist. No. 25,* 681 P.2d 1326, 1333 (Wyo.1984). This measure of damages includes recovery for incidental or consequential loss caused by the breach. *General Insur. Co. of America v. City of Colorado Springs,* 638 P.2d 752, 759 (Colo. 1981). In *Reposa v. Buhler,* 770 P.2d 235, 237–38 (Wyo.1989), we recognized the measure of damages for breach of contract set out in Restatement, Second, Contracts § 347 (1981):

> Subject to the limitations stated in §§ 350–53, the injured party has a right to damages based on his expectation interest as measured by

(a) the loss in the value to him of the other party's performance caused by its failure or deficiency, plus

(b) *any other loss, including incidental or consequential loss, caused by the breach,* less

(c) any cost or other loss that he has avoided by not having to perform. [emphasis added]

Arbitrator Hunter's award was intended to cover such "incidental or consequential loss," as demonstrated in the following statement from his decision letter:

> Under our contracting system the Contractor is willing to take on considerable risk and expend their resources for basically one reason—PAYMENT FOR WORK PERFORMED. To withhold payment strikes at the very heart of the Owner's responsibility under the contract. The contract specifications are very explicit in outlining the payment requirements of the Owner. Withholding payment places a tremendous hardship on the Contractor. The restriction of "cash flow" on any one project, not only affects that project but normally sets off a type of "chain reaction" that totally affects and encompasses the Contractor's entire company. As pointed out in JBC's presentation, "As a result of the Board's failure to pay over one year's worth of work, JBC's capital was impaired; its line of credit was reduced from 16 million to 11 million; it didn't have resources to bid some jobs; its overall backlog had to be reduced; its lenders increased its interest note by ½ of 1%; it suffered a reduction in its bonding capacity and had to obtain a new bonding company." Because of the severe and far-reaching consequences of withholding payment, the Engineer and Owner must, therefore, also bear the tremendous responsibility and liability for the repercussions of their action.

 Thus, the prohibition on double recovery did not necessarily prohibit JBC from recovering consequential damages in addition to its direct damages.[1] As will be

---

1. It is at least questionable whether a claim for consequential damages could have been made "with respect to the contract." JBC has not directed us to any provision of the contract which allows for consequential damages of the type the arbitrator ordered. At least one other

discussed, the real problem with the arbitrator's award lies in the fact that JBC never made a claim for consequential damages under the claims submission process.

### b. JBC's Failure to Present a Claim

 The broad freedom an arbitrator has to resolve disputes and fashion remedies is limited by the contractual nature of the arbitration agreement from which he draws his powers.

> The right to have a dispute submitted to arbitration is contractual. *Panhandle Eastern Pipeline Company v. Smith*, Wyo., 637 P.2d 1020 (1981). An arbitrator's authority is limited by the bounds of the agreement, and courts may vacate awards that extend beyond the contractual scope of arbitration. *International Brotherhood of Electrical Workers, Local 1400 v. Citizens Gas & Coke Utility*, Ind.App., 428 N.E.2d 1320 (1981). An arbitrator exceeds his powers when he decides matters which were not submitted to him. *Himco Systems, Inc. v. Marquette Electronics, Inc.*, 86 Ill.App.3d 476, 41 Ill.Dec. 515, 407 N.E.2d 1013 (1980).

*T & M Properties*, 661 P.2d at 1044.

The Submission Agreement for arbitration entered into by the parties required them to:

> "submit to the representatives, with copies to each other * * * a full statement of each claim made by that party with respect to the Contract, along with such documentary supporting material as that party considers appropriate."

The representatives were to attempt to resolve the parties' claims. If they could not do so, they were to select a neutral third party to decide them. Thus, the submission agreement provided that the arbitrator would decide only those claims made with respect to the contract which were first submitted to the parties' representatives and then forwarded to him for decision.

JBC's failure to submit a claim for consequential damages was consistent with its position below that the total cost remedy was the only contractual remedy provided to make JBC whole under the circumstances. Since JBC never submitted a consequential damage claim according to the required process, it seems almost self-evident that the arbitrator could not make an award of consequential damages.

JBC now argues, however, that its failure to submit a claim for consequential damages would not prevent the arbitrator from making the award he did. JBC points us to cases holding that an arbitrator is free to fashion relief additional to or different from that requested by the parties, and that the questions submitted for the arbitrator's decision should be broadly construed. *Matter of Town of Greybull*, supra 560 P.2d 1172; *Department of Public Safety v. Public Safety Employees Ass'n*, 732 P.2d 1090 (Alaska 1987); *Carte Blanche (Singapore) Pte., Ltd. v. Carte Blanche Int'l, Ltd.*, 888 F.2d 260 (2nd Cir. 1989); *National Tea Co. v. Richmond*, 548 So.2d 930 (La.1989); *David Co. v. Jim W. Miller Const., Inc.*, 444 N.W.2d 836 (Minn. 1989); *City of Worcester v. Granger Bros., Inc.*, 19 Mass.App.Ct. 379, 474 N.E.2d 1151 (1985), *review denied* 394 Mass. 1103, 477 N.E.2d 595 (1985); *Seppala & Aho–Spear Assoc. v. Westbrook Gardens*, 388 A.2d 88 (Me.1978).

Most of the cases JBC cites serve only to cloud the real issue, which is whether JBC observed the contractually-mandated requirements of the claims procedure. *Carte Blanche*, 888 F.2d 260, is closest on point, in that it allowed the arbitrator to award relief for a claim which should have been but was not properly filed. In that case the Eighth Circuit held that the statement of issues provided by the parties was sufficiently broad that it included the omitted

---

court acting under similar circumstances denied damages for delay ordered by an arbitrator which were not provided for by the construction contract. *See Harrison F. Blades, Inc. v. Jarman Memorial Hosp. Bldg. Fund, Inc.*, 109 Ill.App.2d 224, 248 N.E.2d 289, 292 (1969).

*Blades* appears to impose an overly restrictive view of the scope of arbitration, however, and cannot alone be determinative of the issues of this case. More essential is JBC's failure to assert a claim for consequential relief.

claim. The terms of the submission agreement here cannot be so easily satisfied. The total cost claim could *not* substitute, as JBC argues, for a claim for consequential damages for failure to make timely payment. A "claim" must be specific enough to connote assertion of a legal right. *Stephan & Sons, Inc. v. Municipality of Anchorage*, 629 P.2d 71, 75 (Alaska 1981). No such assertion was made through the claims process here.

*Consequential Damages in Tort*

 Because suggested as an issue on appeal, we find it appropriate to discuss whether JBC can recover in *tort* for consequential damages resulting from the City and Board's failure to pay. The issue may surface as the trial court considers the remaining claims on remand, particularly JBC's tort claims, which were not subject to arbitration under the Submission Agreement.

 We have recognized that breach by a contracting party of an independent duty which arises out of the contractual relationship may give rise to an action in tort. *McCullough v. Golden Rule Ins. Co.*, 789 P.2d 855 (Wyo.1990); *Tate v. Mountain States Tel. & Tel. Co.*, 647 P.2d 58 (Wyo.1982); *Cline v. Sawyer*, 600 P.2d 725 (Wyo.1979); *Brubaker v. Glenrock Lodge Int'l Order of Odd Fellows*, 526 P.2d 52 (Wyo.1974). We decline, however, to extend this cause of action to allow recovery in tort for consequential damages resulting from an owner's failure to pay sums due under a construction contract. There are three reasons for this. First, it is not our policy to recognize tort actions for purely economic damages. *See Continental Ins. v. Page Engineering Co.*, 783 P.2d 641, 647 (Wyo.1989) (denying recovery on negligence and strict liability theories for simple product failure). Second, tort recovery based on the contractual relationship should only be allowed where the breach constitutes an independent injury over and above disappointment of the plaintiff's expectation interest. *Bowdish v. Johns Creek Assoc.*, 200 Ga.App. 93, 406 S.E.2d 502, 504 (1991). Finally, tort liability can only be premised on a duty independent of contractual duties. *Preferred Marketing Assoc. Co. v. Hawkeye Nat'l Life Ins. Co.*, 452 N.W.2d 389 (Iowa 1990).

This is not to say that JBC has *no* independent cause of action based in tort, only that such an action cannot be based upon the fact that the City and Board failed to make timely payment. Our holding on this point seems almost self-evident. Failure to pay sums due under a contract or under arbitration provided for by contract is clearly *ex contractu* rather than *ex delicto*.

*Conclusion*

We are not unsympathetic to the quandary JBC found itself in when the City was either unwilling or unable to pay amounts due under the contract and awarded in arbitration. However, we cannot allow JBC to exempt itself from the claims procedure it agreed to in the Submission Agreement, particularly where the failure to file a claim meant that the City and Board would have insufficient notice that the question of moneys due as consequential damages for nonpayment would be at issue. Since no claim for consequential damages was made, the arbitrator had no authority to award such damages. He exceeded his authority when he made the award. Therefore, the trial court properly vacated this portion of the award.

Affirmed.

THOMAS and URBIGKIT, JJ., each files a separate specially concurring opinion.

THOMAS, Justice, concurring specially.

I am in accord with the decision of the majority to affirm the order of the trial court reversing the award of consequential damages by the arbitrator. I agree the arbitrator exceeded his powers in this situation. My concern is about the portion of the opinion of the majority that addresses consequential damages in tort. I do not find that the issue of consequential damages in tort is properly before this court, and our response to the arguments of the parties on the issue is clearly an advisory

opinion. I cannot join in that portion of the majority opinion.

In introducing the topic the majority states:

> Because suggested as an issue on appeal, we find it appropriate to discuss whether JBC can recover in *tort* for consequential damages resulting from the City and Board's failure to pay. The issue may surface as the trial court considers the remaining claims on remand, particularly JBC's tort claims, which were not subject to arbitration under the Submission Agreement.

Majority opinion at 1197.

The order that is before the court in this case dealt only with rulings of the arbitrator and, by definition of the majority, these tort claims were not subject to arbitration. This portion of the majority opinion deals gratuitously with a question that is not presented to the court.

To answer questions which were not brought before this Court would be to issue an advisory opinion. In *State Board of Equalization v. Jackson Hole Ski Corporation*, Wyo., 745 P.2d 58, 59 (1987), we said:

> "Although the question as postulated in this case may be properly before us in the future, to render an opinion here would be to issue an advisory opinion. This court has said repeatedly that it will not issue advisory opinions, and we decline to do so now. *Graham v. Wyoming Peace Officer Standards and Training Commission*, Wyo., 737 P.2d 1060 (1987)."

*Brad Ragan Tire Co. v. Gearhart Industries*, 744 P.2d 1125, 1126 (Wyo.1987).

Our rule is that this court does not offer advisory opinions. *Briggs v. Wyoming Nat'l Bank*, 836 P.2d 263 (Wyo.1992); *Phillips v. Duro–Last Roofing, Inc.*, 806 P.2d 834 (Wyo.1991); *Coulthard v. Cossairt*, 803 P.2d 86 (Wyo.1990); *Wyoming Health Services, Inc. v. Deatherage*, 773 P.2d 156 (Wyo.1989); *State Board of Equalization v. Jackson Hole Ski Corporation*, 745 P.2d 58 (Wyo.1987); *Brad Ragan Tire Company; Graham v. Wyoming Peace Officer Standards and Training Commission*, Wyo., 737 P.2d 1060 (1987); *Koontz v. Town of South Superior*, 716 P.2d 358 (Wyo.1986); *Knudson v. Hilzer*, 551 P.2d 680 (Wyo.1976); *Cranston v. Thomson*, 530 P.2d 726 (Wyo.1975); *West v. Willey*, 453 P.2d 883 (Wyo.1969). Cf. *Reno Livestock Corp. v. Sun Oil Co. (Delaware)*, 638 P.2d 147 (Wyo.1981); *Tobin v. Pursel*, 539 P.2d 361 (Wyo.1975); *Wallace v. Casper Adjustment Service*, 500 P.2d 72 (Wyo.1972). As this court said, in its most recent discussion of this subject:

> It is neither necessary nor proper for this Court to decide in this case whether or not we will enforce a "no contest" clause if a challenged provision in a trust agreement is in violation of the law. Although this question may properly be before us in the future, an opinion rendered in this instance would clearly be advisory. This Court has repeatedly said that it will not issue advisory opinions, and we decline to do so now. *Brad Ragan Tire Company v. Gearhart Industries*, 744 P.2d 1125, 1126 (Wyo.1987); *State Board of Equalization v. Jackson Hole Ski Corporation*, 745 P.2d 58, 59 (Wyo.1987).

*Briggs*, 836 P.2d at 266.

Since this aspect of the court's opinion is a classic example of an advisory opinion, it should not have been uttered, and I feel compelled to disassociate myself from it. Other than this one feature, I concur in the majority opinion.

URBIGKIT, Justice, specially concurring.

I concur in the decision of the court except for the segment regarding consequential damages in tort. I do not understand the tort theory of malicious or improper intent failure to pay construction payments when due to have been presented as a pleaded claim in the initial pleadings or now to be presented as an appellate issue for this litigation. Consequently, if this understanding of the state of our present appellate record is correct, any present

opinion discussion is dictum.[1]

I have a direct concern about any effort to broaden the non-recovery of the consequential damage reach of *Continental Ins. v. Page Engineering Co.*, 783 P.2d 641 (Wyo.1989), for which my dissent remains unremitted.

The more encompassing concern is the broad conclusion developed from any unlimited rule that delayed payments cannot, in properly confined circumstances, create a tort liability. It is my perception that the litigant can state a claim in tort if accompanied by proof of the requisite malice or tortious ulterior purpose which extends damage beyond the economics of purely delayed or denied payments, which would be, generally, the value of the present payment of money. While there may be unusual and scattered cases, the philosophic concept involving the tort of delay or nonpayment, when properly proved, addresses the same generic rationale as first-party or third-party bad faith torts which we considered in *McCullough v. Golden Rule Ins. Co.*, 789 P.2d 855 (Wyo.1990) (first-party) and in *Western Casualty and Surety Co. v. Fowler*, 390 P.2d 602 (Wyo.1964) (third-party bad faith failure to settle).

Tortious conduct resulting from bad faith failure to pay for ulterior purposes or malicious intent should not be excluded from the arsenal of protection available to the wronged party by any assumptive conclusions in this decision where the subject

is not essentially presented by a pending pleading, briefing or oral argument. I do not find the cited cases in the majority decision of *Bowdish v. Johns Creek Associates*, 200 Ga.App. 93, 406 S.E.2d 502 (1991) and *Preferred Marketing Associates Co. v. Hawkeye Nat. Life Ins. Co.*, 452 N.W.2d 389 (Iowa 1990) to be counter-indicative. *See, e.g., Woods Petroleum Corp. v. Delhi Gas Pipeline Corp.*, 700 P.2d 1023 (Okl. App.1983) and the cases cited therein; *Hall Jones Oil Corp. v. Claro*, 459 P.2d 858 (Okl.1969) and *Oklahoma Natural Gas Co. v. Pack*, 186 Okl. 330, 97 P.2d 768 (1939). "It is well settled, however, that a tort may arise in the course of the performance of a contract and that tort may then be the basis for recovery even though it is the contract that creates the relationship between the parties." *Woods Petroleum Corp.*, 700 P.2d at 1027. For comparison, see *Z.D. Howard Co. v. Cartwright*, 537 P.2d 345 (Okl.1975) (misrepresentation or fraud damages instead of contract breach recoveries). *Cf. Zenith Drilling Corp. v. Internorth, Inc.*, 869 F.2d 560, 565 (10th Cir.1989), where the tort concept was introduced, not for the recovery of compensatory damages, but only to seek a punitive damage award. A non-payment tort case, although reaching relationships with third-parties, is considered in *Mississippi Interstate Exp., Inc. v. Transpo, Inc.*, 681 F.2d 1003 (5th Cir.1982).

The foundational concept authored in dispositive fashion for bad faith insurance

---

1. The subject of delayed payments was the basis for the thirty percent arbitration award which is directly included as a subject in this appeal. The events, however, from which that award flowed to now be reversed by this decision, occurred after the July 1987 date when this lawsuit was instituted and also after the Cheyenne, Wyoming Board of Public Utilities secured the initiation of the arbitration proceedings provided in the parties' contract. Piecemeal arbitration awards were made from time-to-time thereafter, but not actually paid by the city. The neutral arbitrator found, as clearly justified within the record, that the Board of Public Utilities used a defensive mechanism for the justification of non-payment by withholding amounts admittedly due accompanied by the contention of a work deficiency retainage. This nullification of both payments already made or proof of right to additional payments was an apparent maneuver to escape budgetary funding

deficiencies encountered by the contracting owner, the Board of Public Utilities.

This non-payment by justification of work deficiencies—when, in reality, the problem was shortage of funds for payment—obviously bothered the neutral arbitrator. He said so and assessed the thirty percent "surcharge."

This dispute, however, developed during arbitration long after the district court complaint and amended complaint had been filed and is not present, as far as I can discern, as a pending pleaded complaint stated in either tort or contract. The facts are not in much dispute and particularly so with finalization of the arbitration award defining basic amounts due from the owner to the contractor. The future potential for further pleadings, including a tort non-payment theory or its constituency criteria or legal effect, has neither been briefed nor argued during this appeal.

cases in *Crisci v. Security Ins. Co. of New Haven, Conn.*, 66 Cal.2d 425, 58 Cal.Rptr. 13, 18, 426 P.2d 173, 178 (1967) recognized:

Fundamental in our jurisprudence is the principle that for every wrong there is a remedy and that an injured party should be compensated for all damage proximately caused by the wrongdoer. Although we recognize exceptions from these fundamental principles, no departure should be sanctioned unless there is a strong necessity therefor.

Consequently, I concur in this court's decision, but would neither: foreclose for this case, if provident, proper or within time limitation provided by statutes of limitation; nor, create for future litigation, an absolute preclusion in this jurisdiction against the injured party's alternative right to the remedies provided by the tort of delayed payment based on particularized malice or ulterior purpose. *Salem Engineering and Const. Corp. v. Londonderry School Dist.*, 122 N.H. 379, 445 A.2d 1091 (1982).