CITY OF WORCESTER vs. GRANGER BROS.; INC. & others.[1]

Suffolk.    December 13, 1984. — February 21, 1985.

Present: GREANEY, C.J., ARMSTRONG, & BROWN, JJ.

*Arbitration,* Award, Scope of arbitration, Authority of arbitrator. *Contract,*
   Public works, Performance and breach, Damages. *Damages,* Breach of
   contract.

Where the city of Worcester in its demands for arbitration of a number of dis-
   putes arising from the construction of the Worcester Civic Center raised
   claims that plans and specifications for the project and certain related
   services furnished by the developer were inadequate, and where the
   contract between the city and the developer specifically stated that the
   developer had obtained the necessary design services by its separate
   agreement with a named firm of architects and engineers, the arbitrators
   did not exceed their authority by finding that the city had not sustained
   any "injury occasioned by any third party for whose acts any of the
   parties named might be liable, specifically including" the firm of ar-
   chitects and engineers, even though the firm was not a party to any
   contract with the city or to the arbitration proceedings. [383-385]
In an arbitration proceeding arising from the construction of a public works
   project for the city of Worcester, the arbitrators did not exceed their
   authority in ordering the city to indemnify the contractor on phase IV
   of the project "in connection with any pending arbitration proceedings
   and litigation brought against [the contractor] by any [p]hase IV subcon-
   tractor," despite the city's claims that there was no evidence before the
   arbitrators to support the order, that the order violated G. L. c. 44, § 31,
   as well as the terms of the contract in question, and that the order
   exceeded the arbitrators' powers by fashioning impermissible relief.
   [385-391]

CIVIL ACTION commenced in the Superior Court Department
on January 6, 1984.

The case was heard by *Hiller B. Zobel,* J.

[1] Worcester Development Consortium, Finance/Design/Construct, Inc.,
United States Fidelity & Guaranty Company, and St. Paul Fire & Marine
Insurance Co.

*Philip M. Cronin*, Special City Solicitor, for the city of Worcester.

*William A. Zucker* for Worcester Development Consortium & another.

*Ripley E. Hastings* for St. Paul Fire & Marine Insurance Co.

GREANEY, C.J. This appeal arises from a judgment of the Superior Court confirming an arbitration award received by the parties on January 3, 1984. We affirm the judgment.

## I. *Parties and Background.*

The arbitration arose out of the construction of the Worcester Civic Center (project), a twelve-thousand seat, multipurpose arena in Worcester. The parties to the arbitration were the project's owner, the city of Worcester (city); its developer, Worcester Development Consortium (WDC); the phase III general contractor, Granger Bros., Inc. (Granger), and its surety, United States Fidelity & Guaranty Company (USF & G); and the phase IV general contractor, Finance/Design/Construct, Inc. (F/D/C), and its surety, St. Paul Fire & Marine Insurance Co. (St. Paul).

The initial "Design/Construct Agreement" between the city and WDC, dated October 14, 1977, provided that the project would be built in six separate phases, each awarded by separate bid.[2] The "[g]uaranteed, [m]aximum [p]rice" of the project, as authorized by the Legislature, see St. 1976, c. 216, § 4(*d*), and fixed by the contract, was $14,500,000. However, the contract expressly provided that this sum could be increased in several ways, including, insofar as relevant here, by "equitable adjustment (including any arbitration award)." The contract also contained a very broad and general arbitration clause which called for the arbitration of "[a]ll claims, disputes and other matters in question arising out of, or relating to this [c]ontract, or the breach thereof."

The design/construct contract required WDC to furnish the city with design plans and to manage construction of the project

---

[2] Only phases III and IV of the construction were involved in the arbitration proceedings.

on a so-called fast-track basis.[3] To satisfy this obligation, WDC gave assurances in the contract that it had obtained the necessary design services by its separate agreement with Ellerbe Associates, Inc. (Ellerbe), and Ellerbe's principals, licensed architects and engineers in Massachusetts. The city was not a party to the contract between WDC and Ellerbe.

On May 15, 1978, the city executed with Granger the phase III contract for foundation work and steel erection. On October 19, 1978, the city executed with F/D/C the phase IV contract for the enclosure of the project and finishing work. Both the phase III and IV contracts also contained broad and general "all claims and disputes" arbitration clauses which were virtually identical to the arbitration clause in the design/construct contract quoted above. The general conditions to these contracts further provided that the general contractors' remedy for any delay caused by either the owner (the city) or the developer (WDC) would be a time extension rather than damages. However, the phase IV contract also contained a provision, in possible conflict with the no-damages-for-delay clause, which made the contract subject to G. L. c. 30, § 39O, inserted by St. 1973, c. 1164. This statute requires a price adjustment in the general contractor's favor if a change in the cost of the contractor's performance is increased by any delay attributable to the awarding authority lasting fifteen days or longer. Pursuant to its contract with the city, F/D/C entered into several subcontracts for the execution of various elements of the enclosure and finish work.

## II. *The Arbitration.*

In the summer of 1979, while the phase III and phase IV work was in progress, dispute arose among the parties involving claims of design error, construction mismanagement, and violations of the phase III and phase IV general contracts. In

[3] The fast-track approach was apparently designed to expedite construction by permitting certain phases of the project to be built on the basis of preliminary design plans, outline specifications, and working drawings, with clarifications or modifications in these materials to occur as necessary without price increases or the parties' incurring unforeseen liabilities.

September of 1979, F/D/C and WDC each independently initiated arbitration against the city. The city responded with arbitration demands against WDC, F/D/C and Granger, and their sureties, St. Paul and USF & G. After arbitration commenced, F/D/C notified the city in writing that it was terminating performance under the phase IV contract because of the city's alleged breach of contract.[4] The city subsequently negotiated change orders directly with the phase IV subcontractors for completion of the phase IV work.

The various demands for arbitration may be summarized (in an overly simplified manner) as follows: As to phase III, the city claimed that Granger had violated the contract in several specific respects, and that WDC had failed to supervise adequately the construction of the project and had failed to provide proper design plans and specifications. WDC claimed that the city's actions had prevented it from properly supervising and managing the project. As to phase IV, F/D/C claimed that the city had committed a breach of contract by failing to deliver the site to it on time with phase III work completed and by failing to grant F/D/C an extension of time to complete its work (made late by alleged phase III delinquencies) with an appropriate price adjustment. The city claimed, in turn, that F/D/C was in breach of its contract and was responsible, among other things, for extra costs and damages incurred by the city in renegotiating the phase IV subcontracts. The American Arbitration Association consolidated the parties' numerous claims and demands for relief into a single proceeding which was conducted before a panel of three specialized arbitrators. Evidence was thereafter received by the arbitrators over a period of 186 days. The evidence resulted in more than 31,000 pages of transcript.[5]

---

[4] In its letter F/D/C alleged that it had, in connection with phase IV, performed as much work as it could on the project and that further work would have to await a survey of the phase III work, reengineering to compensate for allegedly deficient phase III work, and additional work to correct and complete any deficiencies in the phase III work.

[5] Collateral to the arbitration proceedings, the city commenced an action in the Superior Court in December, 1981, against Ellerbe and its engineers,

The arbitrator's award found that Granger, the phase III general contractor, and its surety, USF & G, were liable to the city in the amount of $2,253,182.01. The award further determined that WDC was not liable to the city for design failures or for construction of the project, and that F/D/C was not liable to the city in connection with its performance under the phase IV contract. Finally, the award found that the city was liable to F/D/C, the phase IV general contractor, in the amount of $275,596.49. In addition, the arbitrators ordered the city to indemnify F/D/C against pending court claims and arbitration proceedings which had been brought against F/D/C by the phase IV subcontractors. The city moved in the Superior Court to vacate or modify certain portions of the award and to confirm other portions. WDC, F/D/C, and St. Paul filed cross motions to confirm the award in its entirety. (Granger and USF & G entered an agreement for judgment for the city confirming the award as to those claims). A Superior Court judge allowed the motions to confirm the award and denied the city's motion to vacate or modify the award. The city took a timely appeal and on appeal contests the validity of paragraphs 3 and 5 of the award.

## III. *The Paragraph 3 Issues.*

Paragraph 3 of the award states that the city had failed to prove "that it was injured by any design failures for which the other parties, or any of them, might be liable, including any injury occasioned by any third party for whose acts any of the parties named might be liable, *specifically including Ellerbe, Inc.*" (emphasis supplied). The city makes no challenge to the nonitalicized language. As to the italicized language, the city points to two facts — that Ellerbe was not a party to the arbitration and that the city had no direct contractual relationship with Ellerbe — and argues that the only issue concerning Ellerbe which was submitted to arbitration was whether WDC had violated the phase IV contract by failing to have Ellerbe

---

alleging negligence in the preparation of plans used by WDC in the design of the project. The action was removed by the defendants to the United States District Court for the District of Massachusetts.

make periodic visits to the site. The argument suggests that no basis exists for the finding concerning Ellerbe's conduct because Ellerbe was a stranger to the city and to the arbitration. In substance, the city challenges the arbitrators' conclusion as to Ellerbe on the ground that they acted in excess of the authority conferred upon them.

The argument is answered by a fair reading of the city's amended demands for arbitration. Among the many disputes upon which the reasonable judgment of the arbitrators was sought, there were included claims by the city that WDC: (a) had failed to furnish adequate engineering and architectual services for the project, (b) had failed to complete and provide plans and specifications free of design defects and in compliance with Massachusetts law, and (c) had failed to provide drawings, plans and specifications for the city's use in the completion of the project. Among the items of damages requested by the city was "[a] determination of the damages, costs and expenses sustained by the [c]ity as a result of the delivery by WDC to the [c]ity of defective and deficient plans and specifications which did not wholly or in part comply with the Massachusetts State Building Code."

These demands, in our view, empowered the arbitrators to decide whether Ellerbe was responsible for any of the many problems at the project because of its possible submission of deficient design plans and other services to WDC. Moreover, the initial design/construct contract between the city and WDC specifically assured the city that WDC has "obtained the necessary design skills by contract with Ellerbe Associates, Inc." In turn, that contract further provided that WDC would "cause the [p]roject to be designed . . . on a fast-track basis [see note 3, *supra*] in accordance with the preliminary designs," and "shall cause substantially complete plans and specifications . . . to be completed and the [p]roject . . . constructed on the fast-track design build basis." The designs, plans, and specifications referred to were to be prepared by Ellerbe for WDC. These provisions of the contract, read in light of the city's demands and request for damages noted above, put the issue of Ellerbe's conduct and contractual responsibilities squarely

within the ambit of the arbitration. The arbitrators could reasonably have concluded that Ellerbe was WDC's agent for purposes of the project's design, and, as a consequence, that WDC was liable for any defective design and other services furnished to it by Ellerbe. On that view (keeping in mind that arbitrators are not required to support an award by a statement of reasons, findings of fact, or conclusions of law, see *Fidelity & Cas. Co.* v. *Cooke*, 357 Mass. 763 [1970]), the portion of paragraph 3 of the award which refers to Ellerbe can be analogized to a subsidiary finding upon which the arbitrators could have based their ultimate conclusion that WDC had not committed a breach of the design/construct contract.[6]

All of this brings the language in paragraph 3 of the award now criticized by the city within the scope of the submission. From that point on, the validity of paragraph 3 is governed by the established rule that "an award made within the scope of the submission is not made invalid by a mistake of the arbitrator as to law or fact . . . . Even if he was mistaken in his interpretation of the legal effect of the contract, the award does not thereby become invalid. The parties received what they agreed to take, the honest judgment of the arbitrator as to a matter referred to him." *Jordan Marsh Co.* v. *Beth Israel Hosp. Assn.*, 331 Mass. 177, 186 (1954), quoting from *Phaneuf* v. *Corey*, 190 Mass. 237, 246-247 (1906). There was no error in confirmation of paragraph 3 of the award.

## IV. *The Paragraph 5 Issues.*

In paragraph 5 of the award, the arbitrators ordered the city to indemnity F/D/C, the phase IV contractor, against damages

---

[6] The city also appears to suggest that the denial of a motion by F/D/C and Ellerbe to compel the city to arbitrate the design claims which were the subject of the negligence action in the Federal District Court brought by the city against Ellerbe, see note 5, *supra,* prevented the city from arbitrating the design issues in the main arbitration with WDC. The city was not enjoined by the Federal District Court from arbitrating design issues. The significance of the Federal case, from what we can discern about it on the limited record before us, is not that the motion to compel the city to arbitrate with Ellerbe was denied, but that the Federal court stayed the city's action against Ellerbe pending arbitration.

sustained "in connection with any pending arbitration proceedings and litigation brought against [F/D/C], by any [p]hase IV subcontractor. The [c]ity, as if an insurer of [F/D/C], shall take over the defense of such proceedings and litigation, paying any damages awarded to any such subcontractor therein, or any amount paid, with its approval, by way of settlement and assuming all future costs of defense, including defendant's counsel fees, therein." The city attacks this portion of the award essentially on three grounds: (1) that the arbitrators heard no evidence of the subcontractor claims and therefore had an insufficient factual basis on which to order indemnity, (2) that the indemnity order violates G. L. c. 44, § 31, which prohibits a municipality from incurring a liability in excess of an appropriated amount, and (3) that the award exceeds the arbitrators' powers by fashioning impermissible relief.

The first argument — a claim of lack of proof before the arbitrators of pending phase IV subcontractor claims — must be decided against the city. We have the case on a limited record which does not include the over 31,000 pages of transcript compiled in the 186 days of hearings held before the arbitrators. We have no way of determining what the arbitrators heard about the subcontractors' claims during the course of the protracted proceedings. "While evidence could have been received to try to prove the various delinquencies charged against the arbitrator . . . none was offered. 'It is the legal presumption, unless the contrary appears, that arbitrators pursue the submission and decide only the matters therein contained, and also that they decide all matters submitted to them. And it is incumbent on a party who seeks to impeach an award, on the ground that the arbitrators have not so done, to show that they have not.'" *Fazio* v. *Employers' Liab. Assur. Corp.,* 347 Mass. 254, 257 (1964), quoting from *Sperry* v. *Ricker,* 4 Allen 17, 19-20 (1862).

This principle has application here. The city appears correct in pointing out that exhibit 30A, which delineates the pending phase IV subcontractors' claims, was not formally introduced in evidence before the arbitrators. It is clear from memoranda submitted to the arbitrators, however, that the issue of the city's

liability for the subcontractors' claims was a live issue at the hearings. The defendants, in particular, presented the arbitrators with several legal theories upon which the city's liability for these claims could have been based, some of which would have supported the indemnity order without requiring the arbitrators to determine precisely the subcontractors' pending claims.[7] These claims could not be fixed with precision because they were, at the time of the arbitration, largely unliquidated. The interpretation and settlement of the complex agreements involved here, the many change orders involved, and the numerous difficult questions and disputes raised by the parties were for the arbitrators, and the issues appear to have included the subcontractors' claims against F/D/C. We do not think enough has been shown by the city to overcome the presumption that the indemnity award had a proper foundation in proof. Nor are we inclined to refuse enforcement of the award simply on the basis of a tenuous and unsubstantiated inference of want of proof. *Greene* v. *Mari & Sons Flooring,* 362 Mass. 560, 562 (1972). As stated in *Greene* and relevant here: "In asking this court to grant full plenary review on the merits in order to determine whether the evidence supported the arbitrators' award, the [city] ignores the limited scope of judicial review delineated in G. L. c. 150C, § 11, and consistently applied by this court. In *Kesslen Bros.* v. *Board of Conciliation & Arbitration,* 339 Mass. 301, 302-303, [the] court said: '[I]n the absence of fraud the decision of the arbitrators is binding even though they may have committed an error of law or fact in reaching their conclusion . . . . While it is error of law, and

---

[7] For example, the defendants argued to the arbitrators that the city assumed all of F/D/C's obligations when it "assumed" the subcontracts by entering into change orders with the subcontractors after F/D/C's contract with the city had been terminated. Other theories presented by the defendants included: (1) reliance on the general rule that a party in breach is responsible for all foreseeable damages flowing from that breach, (2) argument that the city's contractual and statutory obligations to make equitable adjustments in the phase IV contract and to grant appropriate change orders gave rise to an express obligation of indemnity; and (3) argument that an implied obligation of indemnity arose from the city's violation of its warranties that the site would be available for the phase IV work or, if not available, that a time extension would be granted.

not merely error of fact, to make a finding which is not warranted by the evidence . . . this is not an error which will invalidate the decision of arbitrators . . . ." *Id.* at 563.

We turn to the city's argument that the indemnification provision is invalid because it conflicts with G. L. c. 44, § 31, the statute which prohibits a municipality from incurring a liability in excess of an appropriation. We have interpreted this statute to prohibit an arbitration award which exceeds the appropriation *unless* the municipality has committed a breach of contract. *Thomas O'Connor & Co.* v. *Medford,* 16 Mass. App. Ct. 10, 13 (1983). Since the issue of which party had committed a breach of the phase IV contract was submitted to the arbitrators, and could have been (and implicitly was) decided against the city, an award of damages exceeding the appropriation was, based on the holding of the *O'Connor* case, valid. As previously noted, this award will not be reversed even if the arbitrators erred in their conclusion that the city had committed a breach of contract. *Jordan Marsh Co.* v. *Beth Israel Hosp. Assn.,* 331 Mass. at 186.

The city also urges that the indemnification award[8] violates the contract because it requires the city to pay delay damages, an expense which was specifically excluded from the contract. A no-damages-for-delay-provision in a public construction contract is valid and may be enforced. See *Wes-Julian Constr. Corp.* v. *Commonwealth,* 351 Mass. 588, 595 (1967). Putting aside the factual question whether indemnification would require the city to pay delay damages at all, the issue whether such damages were prohibited by the contract presented a question of law properly committed for decision to the arbitrators. On the question, the parties referred the arbitrators to other provisions of the contract which could be construed to override the provision in the contract immunizing the city against delay damages.[9] The arbitrators reasonably could have found (and

---

[8] Estimates of the subcontractors' claims range from $605,883 to $748,883, a fraction of the total cost of the project or the $2,253,182.01 awarded by the arbitrators to the city from Granger.

[9] The city argued that § 6.3.4 of the General Conditions precludes damages for delay. The defendants, particularly F/D/C, argued that § 6.3.4 did not

apparently did find) against the city on the question of which of the conflicting contract provisions should prevail, adopting the defendants' position that the contract permitted payment of additional sums found due to F/D/C which exceeded the contract price. Such a conclusion was well within the arbitrators' power based on the differing views of apparently conflicting provisions of the contract.[10]

The city's last argument is that the indemnification provision in paragraph 5 exceeds the arbitrators' powers because it subjects the city to novel damages beyond those "to which any contracting party is commonly subject."[11] *Lawrence* v. *Falzarano,* 380 Mass. 18, 29 (1980).

Indemnification is appropriate in a variety of circumstances. See generally *Araujo* v. *Woods Hole, Martha's Vineyard, Nantucket S.S. Authy.,* 693 F.2d 1 (1st Cir. 1982). As a restitutional remedy indemnity permits a party who is faced with an obligation not his to compel the party responsible for the obligation to discharge it. Indemnity is clearly available as a remedy to arbitrators, who have a broad commission to establish a balance between the parties and are, as a result, less restricted than courts in fashioning relief.

---

apply to delay caused by the acts of third parties such as another general contractor like Granger, and, in any event, that it was superseded by § 7(f)(i) of the phase IV contract, which was required by G. L. c. 30, § 39O, and which provides for an equitable adjustment in the event of delay. Settling conflicting views of contract documents is quintessentially arbitrator's work, and the arbitrator's decision, once made, is usually immune from judicial reversal even if legally erroneous.

[10] The same rationale forecloses the city's arguments that the award violates the bidding statutes, G. L. c. 43, § 28, and G. L. c. 149, §§ 44A-44I, by requiring the city to pay delay damages prohibited by the contract as bid, and the argument that the award violated the enabling statute, St. 1976, c. 216.

[11] The arbitrators may have confused the concepts of indemnification and exoneration. Exoneration contemplates payment of an obligation by one in the position of a surety *before* it is paid by the principal in order to protect the principal from paying the obligation. Indemnification, on the other hand, involves recovery by the principal against the surety *after* the principal has had to pay the obligation. There is no doubt, however, that the arbitrators intended relief in the nature of exoneration, as is made manifest by their reference to the city's assuming the role of an insurer. We will stick with the term used by the arbitrators without rephrasing the award.

As previously noted, there was adequate basis for the arbitrators to find that the city had committed a breach of its phase IV contract with F/D/C. A finding of breach would render the "party in breach . . . liable for the amount of any judgment against the injured party together with his reasonable expenditures in the litigation, if the party in breach had reason to foresee such expenditures as the probable result of his breach at the time he made the contract." *City Welding & Mfg. Co.* v. *Gidley-Eschenheimer Corp.,* 16 Mass. App. Ct. 372, 376 (1983). It follows from this principle (at least as far as this arbitration is concerned), that the injured party (F/D/C) could compel the contract violator (the city) to assume the defense of unliquidated claims brought against F/D/C by the phase IV subcontractors which were caused by the city's breach. It was open to the arbitrators to conclude that the city should have foreseen that its conduct would expose F/D/C to claims by its subcontractors.[12]

Indemnification here also carries some benefit for the city because it permits the city possibly to reduce damages by successful defense or settlement of the pending subcontractors' claims. These claims could not have been liquidated by the arbitrators because, at the conclusion of arbitration, most were still in litigation or awaiting arbitration. Importantly, the city has not been subjected to a potential blank check on damages. The award circumscribes the city's ultimate liability by limiting indemnification only to subcontractor claims "pending" at the time the award was made, see note 8, *supra.* The claims were identified, only the final amount due on them was left unascertained. Contingent awards by arbitrators are valid. See *Trustees of Boston & Maine Corp.* v. *Massachusetts Bay Transp. Authy.,* 363 Mass. 386, 393 (1973). The indemnity award, as

---

[12] As we have noted, the issue of the parties' liability to phase IV subcontractors was before the arbitrators. F/D/C claimed that the city's delay and other alleged defaults made it impossible for it to perform phase IV of the contract and requested all damages incurred as a result. In addition, the city submitted the issue of F/D/C's potential "liability for liquidated damages and extra costs incurred by the city in negotiating subcontracts under the [p]hase IV contract."

we read it in light of the contract, extends only to the claims arising out of the subcontractors' contracts and does not make the city liable for tort claims or damages. We conclude that the indemnification award was a permissible remedy within the broad scope of the arbitration provision. Other arguments by the city seeking to set aside paragraph 5 of the award raise issues (in different terms) which have already been decided. They need not be discussed.

*Judgment affirmed.*