CARMEN A. BARLETTA & others[1] *vs.* LEONARD S. FRENCH
& others.[2]

No. 91-P-902.

Norfolk. November 18, 1992. - February 3, 1993.

Present: WARNER, C.J., FINE, & GILLERMAN, JJ.

· *Arbitration*, Confirmation of award, Judicial review, Parties, Scope of arbitration. *Practice, Civil*, Parties.

A judge in the Superior Court correctly confirmed a decision of arbitrators as to the merits of a controversy between two groups of parties involved in a joint enterprise for development of a parcel of industrial real estate, in the absence of any showing, by the group seeking to impeach the award, that the arbitrators had exceeded their powers by deciding issues beyond the scope of the arbitration. [92-96]

On appeal from a judgment confirming an arbitral award in a dispute between two groups of parties involved in a joint enterprise for development of real estate, where the record provided no basis for the judge's allocation of the benefit or the burden of the award among the members of the respective groups, the award was deemed to be "imperfect in a matter of form, not affecting the merits of the controversy," G. L. c. 251, § 13(*a*)(3), and the Superior Court judge was to modify and correct the award on the basis of principles set forth by this court. [96-97]

CIVIL ACTION commenced in the Superior Court Department on November 17, 1989.

The case was heard by *Roger J. Donahue*, J.

*Alan P. Almeida* for Carmen A. Barletta & others.

*Jerry E. Benezra* for Joseph N. Verna.

*Barry Y. Weiner* for the defendants.

GILLERMAN, J. After eighteen days of hearing the parties involved in a joint enterprise for the development of real es-

---

[1]J. Kenneth Barletta, Joseph N. Verna, Linda Barletta, Edward S. Carreiro, and Robert A. Barletta.

[2]Michael J. French, Marc Winters, Julie A. French (also known as Julie A. French D'Amelio), and Sally Winters.

tate, a panel of three arbitrators published their award in favor of the defendants as plaintiffs in counterclaim (the French party). The award was confirmed in the Superior Court, and the plaintiffs, defendants in counterclaim (the Barletta party), appealed, claiming principally that the arbitrators exceeded their powers. See G. L. c. 251, § 12(*a*)(3). We affirm in part and in part reverse and remand.

The material facts are not in dispute. In September, 1979, Leonard S. French, as trustee of the French Realty Trust,[3] sold a one-half interest in a substantial tract of undeveloped land in Norwood (the land) to Carmen A. Barletta, as trustee of the Barletta Realty Trust.[4] Paragraph eight of the purchase and sale agreement (the 1979 agreement) stated that the parties have entered into a joint enterprise to develop the land into an industrial park, sharing expenses and profits equally. Barletta, the buyer, had the right "to construct buildings for leasing at competitive prices, net profit not to exceed five (5%) per cent." The work of construction was to be undertaken by C.A. Barletta, Inc., a construction company owned by the buyer or such other company as the buyer may select with the approval of the seller.

After the land in Norwood was subdivided, a series of joint venture agreements was executed for the purpose of owning (through a "nominee" trust), constructing, leasing, and managing the subdivisions "as an investment for the production of income." The first joint venture agreement was executed in September, 1981, and included the following arbitration clause: "All controversies, disputes and other matters in question arising out of or relating to this Agreement or the breach thereof shall be decided by arbitration in accordance with the rules of the American Arbitration Association . . . and judgment may be entered on any award rendered by the arbitrators."

---

[3]The beneficiaries of the French Realty Trust are not disclosed in the record before us.

[4]The beneficiaries of the Barletta Realty Trust are not disclosed in the record before us.

Four additional joint venture agreements, all containing substantially the same arbitration clause, were executed in 1982, 1984, 1985, and 1986. Four of the joint venture agreements relate to subdivisions of the Norwood property; one relates to property in Franklin. The five agreements contain virtually identical provisions.

Each of the five agreements identifies the numerous signatories as belonging either to the French party or to the Barletta party; each party owned fifty percent of the profits and losses; each individual member within each party is assigned an ownership interest expressed as a portion of 100%; and each member could be called upon to make additional capital contributions.

The compositions of the French party and the Barletta party are not identical for each of the five joint venture agreements.[5] The number of participants in the Barletta party ranged from three members to six members; the number of participants in the French party ranged from four members to seven members.[6]

The record also includes five, fixed-price construction agreements, each of which is between a nominee for each joint venture and First Norwood Corporation (FNC) as contractor. The record is silent on the point, but we assume, consistently with the 1979 agreement, that FNC was selected by Carmen Barletta and approved by Leonard French. The record is also silent as to the ownership of FNC, although we note that each construction contract was signed by either Carmen Barletta or J. Kenneth Barletta.[7]

---

[5]For example, the Barletta party in the second joint venture agreement includes five persons who had no ownership interest in the first agreement, while excluding two persons who were included in the Barletta party in the first agreement. A review of the composition of the five joint venture agreements in the record appendix reveals that only two of the five Barletta parties appear to have the same composition. Similarly, only two of the French parties appear to be the same.

[6]Regardless of the shifting membership in the two groups, we shall, in the interest of simplicity, refer to the two opposing sides as either the Barletta party or the French party.

[7]The plaintiffs' brief states that FNC was owned by some, but not all, of the members of the Barletta party. We find nothing in the record that

The joint ventures prospered in the 1980's but fell on hard times in 1989, and in November, 1989, six members of the Barletta party filed suit against five members of the French party to compel additional capital contributions in order to cover operating losses. The complaint refers only to the first three joint venture agreements.[8]

The French party responded by filing a motion to compel arbitration which, in the absence of an opposition by the Barletta party, was allowed. Five of the six members of the Barletta party who were named plaintiffs in the Superior Court action thereupon filed a demand for arbitration with the American Arbitration Association with regard to; the same three joint venture agreements described in the complaint, naming as respondents four of the five members of the French party who were named as defendants in the Superior Court action, and adding one member of the French party who was not a defendant in the lawsuit. The claims asserted by the Barletta party were essentially the same as those expressed in their lawsuit.

The members of the French party who were named as respondents in the first demand for arbitration filed an answer and a counterclaim with the arbitrators on March 19, 1990; they denied that there were any monies due the complainants, and their counterclaim alleged that the Barletta party, through entities owned or controlled by them, had paid themselves excessive sums and were "skimming off" funds of the joint venture otherwise available for operations of the business.

On April 4, 1990, the five members of the French party who were named as respondents in the first demand for arbi-

_reveals the ownership of FNC. Moreover, the Barletta party was a shifting, not a fixed, group of people._

[8]The six plaintiffs appear as part of the Barletta party in all three of the joint venture agreements declared on, but three members of second agreement (one of whom is also a member of the third agreement) do not appear among the plaintiffs. The five defendants named in the action do not include one person who has an ownership interest in all three agreements declared on, and includes one person who had no interest in any joint venture agreement. The asymmetry of the parties to the Superior Court action and the parties to the five joint venture agreements is even more extensive.

tration filed their own separate demand for arbitration against eleven members of the Barletta party, including two persons as respondents who appear as part of the French party on one of the five joint venture agreements. This second demand for arbitration refers the reader to "attachments" for a description of the nature of the dispute and the claim or relief sought. The attachments, however, were not included in the record appendix, and we have no way of determining which joint venture agreements were put in issue, nor can we determine the issues to be arbitrated or the individuals involved.

In January of 1991, the panel of three arbitrators published their award. The award, which appears as an appendix to this opinion, recites that the arbitrators were designated in accordance with an arbitration agreement dated March 19, 1990, but no such agreement appears in the record appendix, and we lack information with regard to the parties to the agreement and the issues they agreed to arbitrate.

The arbitrators' award recites that it is issued in respect of the two arbitration cases which had been created in response to the two demands for arbitration. The award referred to fourteen — not five — joint venture agreements, and described the "claimants" as "Carmen A. Barletta, et al.," and the "respondents" as "Leonard S. French, et al."

The arbitrators awarded $698,931 to the Barletta party with regard to fourteen joint venture agreements (separate amounts are set out for each of the agreements), and they awarded $1,033,613 to the French party, with the explanation that "Paragraph Eight of the 1979 purchase and sale agreement applies to construction. Share of excess profits *due French* - $1,033,613." The result of the award was a net amount of $334,682 due the French party, "plus legal interest (12%) from July 31, 1990."

The French party (consisting only of the defendants in the original Superior Court action) then filed an answer and counterclaim in the Superior Court action. Ignoring the undoubted discrepancy between (i) the parties whose interests were affected by the award of the arbitrators and (ii) the

parties to the Superior Court action, the French party set up the award of the arbitrators as the basis for their counterclaim and referred to thirteen joint venture agreements identified in the award of the arbitrators. The record is silent as to the ownership interests in eight of the thirteen joint venture agreements. On the same day they also filed in the same action a motion to confirm the award and for the entry of judgment. The plaintiffs moved to vacate, modify, or correct the award of the arbitrators. A judge of the Superior Court, after a hearing, confirmed the award and entered judgment in the amount of $334,682 in favor of the original five members of the French party, with joint and several liability of the six members of the Barletta party, and with interest from January 22, 1991.

We consider first the claims made by the six members of the Barletta party with regard to the confirmation of the award, mindful of the rule that "[a] matter submitted to arbitration is subject to a very narrow scope of review." *Plymouth-Carver Regional Sch. Dist.* v. *J. Farmer & Co.*, 407 Mass. 1006, 1007 (1990).

1. *The validity of the award of the arbitrators.* The Barletta party argues that the arbitrators exceeded their powers, see G. L. c. 251, § 12($a$)(3), for several reasons. They point to items three and four of the award, both of which refer to the work of construction. Item three refers to required repairs to the floor of the building owned by the second joint venture agreement; item four refers to "excess profits" taken during the work of constructing the buildings for the joint enterprise, the amount of the excess profits having been determined by reference to paragraph eight of the 1979 agreement which imposed a five percent profit limitation on the contractor. In respect of both items, the Barletta party points to the fact that it was FNC who did all the work of construction for the joint ventures[9] and that FNC is not a party to the arbitration proceedings because it was not named as a party in any demand for arbitration or in any

[9] We have noted earlier in this opinion that FNC was the contractor in the five construction contracts.

response to such demand. Thus, say the Barletta party, the arbitrators have established a liability of a nonparty and improperly fastened it upon the Barletta party when the arbitrators had the power to do neither. See *Computer Corp. of America* v. *Zarecor*, 16 Mass. App. Ct. 456, 459-460 (1983) (arbitration may proceed only as to those parties who agree to arbitrate). Moreover, say the Barletta party, there is not even an agreement to arbitrate in the 1979 agreement — the agreement which authorized the work of construction to be undertaken by a Barletta-controlled entity.

There is no merit to any of these arguments. The issue is not whether FNC was a party to the arbitration proceedings between the French and Barletta parties, nor whether the 1979 agreement contained an arbitration clause; the only question is whether the French and Barletta parties agreed to submit to binding arbitration the issues the arbitrators decided.

We note, preliminarily, that the arbitration clause in all the joint venture agreements[10] was in the most general terms ("All controversies . . . arising out of or relating to this Agreement . . . "), and we have previously said, quoting from *Carter, Moore, & Co.* v. *Donahue*, 345 Mass. 672, 676 (1963), that a broad agreement to arbitrate "should be construed as broadly as it was intended." *Danvers* v. *Wexler Constr. Co.*, 12 Mass. App. Ct. 160, 163 (1981). We have also said that, "[o]nce in the arena of arbitration, the powers of the arbitrator[s] concerning the issue [before them] are wide and the scope of judicial review of the arbitration proceedings is narrow." *Grobet File Co. of America, Inc.* v. *RTC Sys., Inc.*, 26 Mass. App. Ct. 132, 135 (1988). See also *Lawrence* v. *Falzarano*, 380 Mass. 18, 28-29 (1980) ("If the arbitrators in assessing damages commit an error of law or fact, but do not overstep the limits of the issues submitted to

---

[10]Absent any contrary showing by the Barletta party, we assume that all thirteen joint venture agreements had substantially the same arbitration clause as those appearing in the five agreements reproduced in the record appendix.

them, a court may not substitute its judgment on the matter").

Because the construction of buildings was stated in the joint venture agreements to be a purpose of the joint enterprise, it follows that a dispute concerning the work of construction (see award of the arbitrators, item 3) "arose out of . or is related to" the joint venture agreement. The same is true for the claim that entities owned and controlled by Barletta, by charging excessive fees, "skimmed off" funds available for the business and profit of the joint enterprise (see award of the arbitrators, item 4), for that is a claim which has to do with the fiduciary obligations that "joint adventurers, like partners, owe to one another. . . ." *Mendelsohn v. Leather Mfg. Corp.*, 326 Mass. 226, 233 (1950).

In undertaking the task of assessing that claim, the arbitrators might reasonably look to the standards agreed upon in the 1979 agreement. That agreement states in paragraph eight that Barletta and French "have entered into a joint enterprise as tenants in common to develop the premises into an industrial park, sharing the expenses and the profits equally." The same paragraph gave Carmen Barletta the *right* to construct buildings for the joint enterprise through companies in which he had a personal interest, but subject to the five percent profit limitation. The 1979 agreement expressly contemplated the creation of specific joint venture projects for the purpose of developing an industrial park, and it provided the contractual foundation for the fourteen joint venture agreements executed later. Even if the arbitrators were in error in adopting the five percent standard established in the 1979 agreement, their award will not be set aside. See *Plymouth-Carver Regional Sch. Dist.* v. *J. Farmer & Co.*, 407 Mass. at 1007 ("errors of law or fact are not sufficient grounds to set aside an award . . . [and 't]he question of interpretation of the agreement is for the arbitrator' "); *Worcester v. Granger Bros., Inc.*, 19 Mass. App. Ct. 379, 387-388 (1985).

The claim of the French party for the recovery of excess profits was clearly asserted by them in response to the first

demand for arbitration,[11] and that claim appears to have been fully tried before the arbitrators. Nowhere does the Barletta party assert that the issue was tried over their timely objections. Absent clear evidence that the arbitrators, over the objections of the Barletta party, decided issues outside the "arena of arbitration" — and there is no such evidence here — the award of the arbitrators is binding upon the parties. *Grobet File Co. of America, Inc.* v. *RTC Sys., Inc.*, 26 Mass. App. Ct. at 135. We are aided in the result we reach by the "legal presumption . . . that arbitrators pursue the submission and decide only the matters therein contained, and also that they decide all matters submitted to them. And it is incumbent on a party who seeks to impeach an award, on the ground that the arbitrators have not so done, to show that they have not." *Worcester* v. *Granger Bros., Inc.*, 19 Mass. App. Ct. at 386, quoting from *Fazio* v. *Employers' Liab. Assur. Corp.*, 347 Mass. 254, 257 (1967), quoting from *Sperry* v. *Ricker*, 4 Allen 17, 19-20 (1862).

It is noteworthy that in this case the arbitrators stated clearly what they believe they had accomplished; they concluded their award with the following statement: "This award is in full settlement of all claims and/or counterclaims submitted to this arbitration." The issues of claim of the Barletta party for capital contributions by the French party, the French party claim for floor repairs, and the French party claim for construction profits earned by FNC in excess of the permitted five percent ceiling are deemed to have been properly submitted to and decided by the arbitrators.[12]

---

[11]The record appendix includes the counterclaim to the first demand for arbitration (raising the issue of the "skimming off" of joint venture funds), but, as noted earlier, the record appendix does not include the issues raised by the second demand for arbitration (because the attachments were not included), nor does it include the arbitration agreement of March 19, 1990, to which the arbitrators referred at the outset of their award. Those omissions provide no help to the Barletta party; it was their duty as appellants to prepare the content of the appendix. See Mass.R.A.P. 18(a), as amended, 378 Mass. 940 (1979).

[12]What we have said disposes of the claims that the arbitrators failed to give effect to a one-year period of limitations for the correction of work as provided in the construction contracts, that the arbitrators refused to hear

We conclude that the judge correctly confirmed the award of the arbitrators, but only as to the merits of the controversy.

2. *The judgment to be entered on the award.* The award of the arbitrators, which refers to the parties merely as "Carmen A. Barletta et al.," and Leonard S. French et al.," does not identify all the individual owners of the fourteen joint ventures to which the award refers, nor does it allocate among such persons (who participated in the joint enterprise in varying proportions, see note 5, *supra*) either the benefits or the burdens of the award. The problem is compounded by a record appendix which is seriously deficient. The arbitration agreement dated March 19, 1990, to which the award refers, and which presumably identifies the parties to the arbitration proceedings, is omitted from the record appendix. The problem is further compounded by the fact that the French party, and the judge as well, appear to have ignored the discrepancy between (i) the individuals who are parties to the Superior Court action (six members of the Barletta party and five members of the French party) and (ii) the individuals who were named as parties to the demand for arbitration filed by the French party (eleven members of the Barletta party and five members of the French party, one of whom is not a party to the Superior Court action), or, if different, the individuals named in the arbitration agreement dated March 19, 1990.

We conclude that there is no basis in the record before us for the allocation of the benefit of the final award of $334,682 equally among five members of the French party named in the original Superior Court action. Similarly, there is no basis in the record before us for the allocation of the burden of the final award equally among six members of the Barletta party without the award of the arbitrators allocating

---

material evidence, and that there was a miscalculation of the figures by the arbitrators. The claim with regard to the refusal of the arbitrators to accept additional evidence was included in the Barletta party's motion to the arbitrators for the modification of their award. In response to the motion, the arbitrators wrote that "after careful consideration [of the arguments supporting the motion] . . . the Arbitrators have denied the motion."

liability for FNC's excess profits among those of the Barletta party who owned FNC, or benefited from the excess profits it received. We conclude that "the award is imperfect in a matter of form, not affecting the merits of the controversy." G. L. c. 251, § 13(a)(3), as inserted by St. 1960, c. 374, § 1.

In accordance with G. L. c. 251, § 13(b), the Superior Court judge should have granted the application of the Barletta party to "modify and correct the award so as to effect its intent and . . . confirm the award as so modified and corrected. . . ."[13]

---

[13]The allocation of the benefits and the burdens of the award is not without its complexities, and, unless a further demand for arbitration is made by a party entitled thereto, a hearing will be required. The underlying difficulty is that the parties to the Superior Court action are not all the parties to the joint venture agreements or to the demands for arbitration. The principal item to be allocated is the excess profits award of $1,033,613. This amount, plus interest, must first be distributed among the joint ventures by an allocation based upon the excess fees charged to and paid by each joint venture construction project. Each member of the Barletta party and each member of the French party having ownership interests in each of the ventures will then share the burdens and benefits, respectively, of the allocated portion of the award in the same proportion as their ownership interests in the joint venture. However, one or more members of the Barletta party (such as the appellant Joseph N. Verna) may claim that he or she never had an ownership interest in FNC, the recipient of the "excess profits," or that the ownership interest did not exist when the excess fees were taken. In such circumstances, members such as Verna may be entitled to be indemnified by other members of the Barletta party who participated in, and benefited by FNC's wrongful receipt of excess fees. See Elias v. Unisys Corp., 410 Mass. 479, 482 (1991) ("Indemnity . . . allows someone who is without fault, compelled by operation of law to defend himself against the wrongful act of another, to recover from the wrongdoer the entire amount of his loss, including reasonable attorney's fees"). Essentially the same principles apply with regard to the award for additional capital contributions required of the French party. Here, the arbitrators identified and quantified the required capital contribution for each joint venture; there remains only the need to allocate the burdens and benefits among the individual members of each joint venture. All the parties necessary to the entry of a final judgment will have to be joined as parties plaintiff or defendant, as the case may be. Many, if not all, of the foregoing issues are capable of resolution by counsel to the parties on undisputed facts, and we assume that counsel to the parties will, in good faith, undertake that effort. The final judgment entered in the Superior Court provided for the joint and several liability of the Barletta party. This

This case is remanded to the Superior Court solely to mod-
ify and correct the award of the arbitrators by allocating the
benefits and burdens of the award on the basis of the princi-
ples set forth in note 13 to this opinion. In all other respects,
the judgment is affirmed.

*So ordered.*

### APPENDIX.
#### *AMERICAN ARBITRATION ASSOCIATION*

Carmen A. Barletta, et al, Claimants
  vs.
Leonard S. French, et al, Respondents

Cases #11-115-00124-90 and #11-115-00204-90

We the undersigned arbitrators, having been designated in accordance
with the arbitration agreement entered into between the above named par-
ties and dated 3/19/90, and having been duly sworn and having duly
heard the proofs and allegations of the parties, award as follows:

1. A credit to the Barletta Group in the amount of $698,931 as follows:

|                          | Due Barletta | Due French |
|--------------------------|-------------:|-----------:|
| Norwood Park South       | 2,525        |            |
| Franklin Norwood Park    |              | 48,971     |
| *Norwood Park South I    | 113,032      |            |
| *Norwood Park South II   | 104,318      | 77,883     |
| *Norwood Park South III  | 178,010      |            |
| Norwood Park South IV    | 980          |            |
| *Norwood Park South V    | 18,412       |            |
| Norwood Park South VI    | 1,140        |            |
| Kenwood Realty           | 27,708       |            |
| *Kenwood Park I          | 430,414      |            |
| Ashley Realty            | 669          |            |
| Franklin South Realty    | 13,128       |            |
| Motel Realty             | 1,049        |            |
| **Maple North            |              | 65,600     |
| Totals                   | 891,385      | 192,454    |

issue, which was not fully briefed in this court, must be considered anew in
the Superior Court, after taking into account the principles set forth in this
note. The same is true as to the matter of interest which may be due the
parties. What we have written here disposes of the separate appeal of Jo-
seph N. Verna, as he conceded in his brief filed in this court.

| | |
|---|---:|
| Due <u>Barletta</u> on above | 698,931 |

2. We find no August, 1988 agreement to increase the management fees.

3. The contractor is liable for the NPS II floor repairs.
4. Paragraph Eighth of 1979 purchase and sale agreement applies to construction. Share of excess profits <u>due</u> French — 1,033,613

| | |
|---|---:|
| Net due from Barletta to French | $334,682 |
| plus legal interest (12%) from 7/31/90 | |

**5. Sole ownership of Maple North to be retained by Barlettas: French contributions (without interest) to be returned.

6. Each party to pay its own legal fees and costs and also its own administrative fees and costs totaling $9381.42 to the American Arbitration Association.
Amounts owing to American Arbitration Association:

| | | |
|---|---|---:|
| Barletta | - administrative and expenses | - $ 643.97 |
| | - arbitrators' fees and expenses | - 2,854.00 |
| | | $3,497.97 |
| French | - administrative and expenses | - 3,733.82 |
| | - arbitrators' fees and expenses | - 2,304.00 |
| | | $6,037.82 |

This award is in full settlement of all claims and/or counter-claims submitted to this arbitration.

s/James J. Sullivan, Sr. 1/11/91
James J. Sullivan, Sr.

s/Julien F. Begien 01/11/91
Julien F. Begien

s/June Y. Kilmarx 1/10/91
June Y. Kilmarx