van Gestel, J.
These matters are before the Court on a joint motion by the Massachusetts Highway Department (“MHD”) and the Massachusetts Turnpike Authority (“Mass. Pike”) (collectively the “CA/T Project”) for partial summary judgment declaring as a matter of law that a certain CA/T Project Director’s September 30, 2000, Decision is final, binding and conclusive under G.L.c. 30, Sec. 39J. The motion is opposed by Perini-Kiewit-Cashman, Joint Venture (“PKC”).
BACKGROUND
In issue are certain aspects of Public Construction Contract C11A1 (the “C11A1 Contract”) for the construction of that part of the Central Artery/Tunnel Project involving 1-93 Northbound from Kneeland Street to Congress Street in downtown Boston. PKC is the general contractor under the Cl 1A1 Contract with MHD. MHD and Mass. Pike are the managers of the CA/T Project.
The Cl 1A1 Contract includes provisions for a dispute resolution process. The CA/T Project suggests in its supporting memorandum that, at present, approximately 400 claims between PKC and MHD are in the dispute resolution process and remain unresolved, those claims having a total value of approximately $160 million dollars.
The dispute resolution process in the Cl 1A1 Contract involves a Disputes Review Board (“DRB”) estab *565 fished pursuant to Division I, Subsection 7.16 of the C11A1 Contract. As originally created, the DRB was to hear disputes and to issue non-binding findings and recommendations. (This process will be referred to herein as the “non-binding DRB agreement” or the “non-binding process.”) The recommendations from the non-binding process would then be referred for a decision to the Project Director. If, within a defined time, the contractor — here, PKC — does not appeal the Project Director’s decision either to the MHD Board of Contract Appeals or file a suit in the Superior Court, “the Project Director’s Decision shall be final and binding, and any further administrative or judicial review shall be barred.”
If an appeal from the Project Director’s decision is timely made, “for purposes of subsequent administrative or judicial review, MGL Chapter 30, Section 39J shall apply.”
Section 5.01 of Division I of the General Requirements and Covenants of the C11A1 Contract grants authority to the “Engineer”[2] to
decide all questions which may arise as to the interpretation of the Contract Documents . . .; all questions which may arise as to the quality, quantity, value and acceptability of materials furnished or to be furnished and Work performed or to be performed; all questions which may arise as to the progress of the Work and need for and manner of correcting the same, and also the need for and terms of delays and suspensions; all questions relating to the need for and terms of extra work; all questions relating to the supervision, control and direction of Work on the site and the use thereof; all questions as to the acceptable fulfillment of the Contract on the part of the Contractor.
Section 5.01 also states that ”[o]nce the Engineer provides a determination, any such determination shall be final and binding on the Contractor, unless the Contractor delivers to the Department a written claim notice within ten (10) days after receipt of the determination, in accordance with Subsection 7.16.”
On March 25, 1999, MHD and PKC also entered into a binding dispute resolution agreement (the “binding DRB agreement”). The binding DRB agreement authorizes the DRB to issue final, binding, and conclusive determinations on certain disputes pertaining to specific claims fisted on Exhibit 1 to the binding DRB agreement. The binding DRB agreement is said to “supersede and/or supplement, where appropriate, the dispute resolution process set out in Division I, Subsection 7.16 et seq., of the Contract.”
It is further provided in the binding DRB agreement that the DRB’s orders or awards thereunder shall be “valid, final and binding upon the Parties and shall be enforceable by the Superior Court of the Commonwealth of Massachusetts.”
It is with the foregoing general background that the Court now turns to certain actions by two separate DRBs, under both binding and non-binding situations, and the interplay of a Project Director’s decision thereon. The Court will describe what occurred chronologically.
Pursuant to the non-binding DRB procedures set out in subsection 7.16, in January of 1999 the parties submitted two disputes to the then existent DRB. This DRB will hereafter be called the “First DRB.” The two disputes are referred to by the parties as the “Subaru” dispute and the “BECo” dispute. While the parties were processing these two disputes, they reached agreement and executed the binding DRB agreement. Consequently, the CA/T Project and PKC agreed that resolution by the DRB of the Subaru and BECo disputes also would be binding.
On March 26, 1999, the First DRB issued its decisions on the Subaru and BECo claims. It found merit in PKC’s claims for direct costs and made monetary awards therefor. It found no merit, however, in PKC’s claims for delay and denied PKC’s request for an extension of contract time. Included near the end of those two decisions is the following statement:
TIME EXTENSION; COMPENSATION[3]
The Board has been requested by the parties to respond to the question of how extended overhead compensation is to be determined in cases where it is allowed. It is the opinion of the Board that the Contract requires the mark up for delay be on the “10 & 10" method rather than a ’’per diem" basis.
The above stated recommendations of the Board are the unanimous opinion of the three members and each member concurs with the recommendations.
The “10 & 10" method (sometimes herein referred to as the ”10/10" method) is a simple formula that limits extended overhead recovery to the direct cost of the work plus 10% overhead and a 10% markup. The per diem basis, would provide a recovery based upon PKC’s actual costs incurred.
PKC suggests that it saw no need to move to modify or vacate the First DRB’s comments regarding the 10/10 issue because it was not a factor in either the Subaru or the BECo decisions.
The issue of the method of compensation for extended overhead is not one of the specific claims fisted on Exhibit 1 to the binding DRB agreement. Nor has the Court been advised as to whether, when "requested by the parties” to answer their question, this particular determination was to be binding or non-binding.
Following the resignation for health reasons of one of the First DRB’s members, the parties selected an entirely new Second DRB. Thereafter, on February 24, 2000, PKC submitted to the Second DRB an Omnibus Time Claim. The claim is said to include “thousands of pages of documentation.”
*566 The Second DRB issued its Order No. 1, wherein it commented on the First DRB’s opinion on the issue of extended overhead. The Second DRB said it found the opinion “unclear, incomplete and of questionable authorization.” The Second DRB also said that it was “unable to apply the previous Board’s opinion consistent with the contract provisions,” and scheduled a formal hearing on the issue for July 17, 2000.
Following the July 2000 hearing, the Second DRB, on August 18, 2000, issued its decision on Order No. 1. The decision was in two parts, designated as Order #1A and Order #1B.
Order #1A is said by the Second DRB to be in “accordance with the Binding Disputes Resolution Agreement dated March 25, 1999 . . .’’It concludes with the following order:
5.0 DRB ORDER #1A: The Disputes Review Board has reviewed this dispute which concerns the Contractor’s claim for delay costs, has followed the procedures prescribed in the Binding Agreement and issues the following binding order:
1. The Opinion of the previous Board on the issue of compensation for extended overhead for Owner delay as stated in Recommendations dated March 26th, 1999 is not a binding Order or Award; lacks clarity and sufficient detail for application; and the procedures followed in its development fail to comply with the requirements precedent to a binding DRB adjudication pursuant to the Binding Agreement.
2. The above Opinion of the previous Board is therefore not authorized as an Order binding on the Parties pursuant to the March 25th 1999 Agreement. The Opinion shall be considered a Recommendation subject to the non-binding DRB process set forth in the Contract Exhibit 1G, Division 1, Subsection 7.16 of the Contract specifications.
Order #1B is said by the Second DRB to be in “accordance with the [non-binding] Contract provisions, Exhibit 1G, Division 1, Subsection 7.16 . . .” It concludes with the following recommendations:
3.0 RECOMMENDATIONS:
1. The issue of computation and global application of extended overhead compensation attributable to all claims for Owner delay is outside the scope of the Binding Agreement dated March 25, 1999. The DRB is therefore providing the following non-binding recommendation:
That the Contractor should not be barred from claiming compensation for extended overhead resulting from Owner delay, and should not be limited to the 10/10 Markups referenced under Standard Specification Section 9.03, Payment for Change Orders.
2. The Board will be prepared to hear and issue Binding Orders with respect to disputes over delays and damages resulting from those claims identified in the Binding Agreement. Both Parties will be provided opportunity to fully present their positions and responses on delays and damages in accordance with the Binding Agreement.[4]
On September 30, 2000, Michael Lewis, the then Acting Project Director, issued a Project Director’s Decision regarding the 10/10 issue. This decision reaches the following conclusion:
For the reasons stated above,[5] I determine that PKC’s recoverable costs for extended overhead due to owner-caused delay are subject to the formula and limitations of Subsection 9.03 of the C11A1 Contract. Specifically, payment for such costs may not exceed the 10% + 10% amounts that this provision of the contract authorizes.
This Decision is final unless, within ninety days of its receipt, PKC takes action pursuant to Subsection 7.16 G. 10 of the contract. In the interim and pending the final disposition of any appeal or litigation by which PKC challenges this Decision, the Decision shall be followed in the administration of the Cl 1A1 Contract and in the hearing and determination of all “disputes” by any DRB.
PKC filed a timely appeal from the Project Director’s Decision, which is the suit filed and docketed above as Suffolk No. 00-5700 BLS.
The foregoing describes the background upon which the present motion for partial summary judgment will be assessed. As the caption above signals, there are three consolidated cases pending, and the CA/T Project’s motion bears a caption including all three cases. The cases are Nos. 00-4096 BLS, 01-0906 BLS and 00-5700 BLS. However, only two of the cases seek declaratory relief: case No. 00-4096 BLS in Count I and case No. 00-5700 BLS in its only count, also designated Count I.
DISCUSSION
Summary judgment is granted where there are no issues of genuine material fact and the moving party is entitled to judgment as a matter of law. Lindsay v. Romano, 427 Mass. 771, 773 (1998); Hakim v. Massachusetts Insurers’ Insolvency Fund, 424 Mass. 275, 281 (1997); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating that there is no triable issue of fact. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). The CA/T Project argues that the Court can, and should, rule in its favor based solely upon a proper interpretation of the contract language and an examination of the “record.”
PKC has filed a Rule 56(f) affidavit contending that it needs discovery to demonstrate that the decision by the Project Director was made in bad faith, and is arbitrary, capricious, fraudulent and outside the Project Director’s authority. For the reasons stated here *567 after, this Court sees no reason to open up such discovery.
Interpretation of an unambiguous agreement is, of course, an issue of law for the Court. Lumbermans Mut. Cas. Co. v. Zoltek Corp., 419 Mass. 704, 707 (1995). Contract language must be construed in its usual and ordinary sense. 116 Commonwealth Condominium Trust v. Aetna Cas. & Surety Co., 433 Mass. 373, 376 (2001); Citation Ins. Co. v. Gomez, 426 Mass. 379, 381 (1998). A contract provision is ambiguous “only if it is susceptible of more than one meaning and reasonably intelligent persons would differ as to which meaning is the proper one.” Citation, at 381. The mere fact that parties disagree on the proper construction of contractual language, however, does not necessarily establish ambiguity. Lumbermans Mut. Cas. Co. v. Offices Unlimited, Inc., 419 Mass. 462, 466 (1995).
Generally, “(t]he object of the court is to construe the contract as a whole, in a reasonable and practical way, consistent with its language, background and purpose.” USM Corp. v. Arthur D. Little Systems, Inc., 28 Mass.App.Ct. 108, 116 (1989). The Court must act in a way to give effect to an agreement as a rational instrument in order to carry out the intent of the parties. Starr v. Fordham, 420 Mass. 178, 192 (1990). Even in the case of an ambiguous agreement, interpretation is a matter of law for the Court except insofar as it may turn on facts in genuine dispute. Gross v. Prudential Ins. Co. of America, Inc., 48 Mass. App.Ct. 115, 119 (1999).
Justice, common sense and the probable intention of the parties upon consideration of the words in question are guides to the construction of a written contract. City of Haverhill v. George Brox, Inc., 47 Mass.App.Ct. 717, 720 (1999).
In construing the contractual language here, the Court must give effect to the intentions of the parties, as expressed in the language employed, considered in the light of the context of the transaction and the purposes to be accomplished. Starr v. Fordham, 420 Mass. 178, 190 (1995); Shea v. Bay State Gas Co., 383 Mass. 218, 224-25 (1981). The CA/T Project, however, is made up of governmental entities acting in their governmental roles. Thus, the words of Justice Holmes must echo in this Court's assessment of the request for summary judgment. “Men must turn square corners when they deal with the Government.” Rock Island, Ark. & La. R.R. v. United States, 254 U.S. 141, 143 (1920). See also Lafayette Place Associates v. Boston Redevelopment Authority, 427 Mass. 509, 524 (1998).
In this case there are two legal theories that add further curbs on the actions available to this Court and to how it may assess the situation presented; the law that relates to arbitration proceedings and G.L.c. 30, Sec. 39J.
Arbitration is a matter of contact, and a party cannot be required to submit any dispute to arbitration unless it has agreed to do so. Local Union No. 1710 Intern. Ass’n of Fire Fighters, AFL-CIO v. City of Chicopee, 430 Mass. 417, 421 (1999). Courts have very limited roles to play in matters in arbitration. Basically, a judge may, at the beginning, determine whether the parties have agreed to arbitrate a particular matter and, at the end, subject to a very narrow scope, determine whether to set aside the arbitration award. Once it is determined according to the parties’ agreement that a matter should be arbitrated, then questions relating to the interpretation of the agreement are for the arbitrator, not the Court. See Barnstead v. Ridder, 39 Mass.App.Ct. 934, 936 (1996). Similarly, the arbitration award may only be set aside if the arbitrators exceeded the scope of their authority or decided the matter based on fraud, arbitrary conduct, or procedural irregularities in the hearing. See, e.g., Plymouth-Carver Regional School District v. J. Farmer & Co., Inc., 407 Mass. 1006, 1007 (1990). There is a strong public policy favoring arbitration, and Courts must be exceedingly cautious about interfering with the proceeding or its results. Bureau of Special Investigations v. Coalition of Public Safety, 430 Mass. 601, 603-04 (2000); Minton Const. Corp. v. Commonwealth, 397 Mass. 879, 880 (1986). See also Judge Giles’s September 21, 2000, Memorandum of Decision and Order Upon Plaintiffs’ Motion for Stay Under G.L.c. 251, Sec. 2(b), issued in the above case No. 00-4096BLS, at pp. 6-7.
It is common for construction contracts to contain provisions, like that in Section 5.01 here, giving to some person such as an architect or an engineer final and binding power to decide disputes that arise during the course of the work. At common law such decisions were almost untouchable by a Court. Because of G.L.c. 30, Sec. 39J, however, review of such an engineer’s decision — here, that of the Project Director — that is otherwise said by the contract to be final and binding has become similar in many respects to the review of an administrative decision under G.L.c. 30A, Sec. 14. Basically, the Court may only look to see if such a decision was made in bad faith, fraudulently, arbitrarily, capriciously, or outside of the Project Director’s authority. Fontaine Brothers, Inc. v. Springfield, 35 Mass.App.Ct. 155, 158 (1993). And at least in the first instance, that judicial review must come from an examination of the record alone.
There is an obvious tension between the Project Director’s powers to render final and binding decisions and those of the DRBs to do the same under the binding DRB agreement. Further, there is a tension between the authority of the DRBs to decide certain issues and that of the Court.
In the situation presented by the present motion, the following conclusions may be reached. The disputes resolution procedures, whether binding or not, *568 are a form of contractually accepted arbitration and must be treated by the Court as such. Consequently, at this stage the Court has no real role to play with the actions of the DRBs until the arbitration processes reach the point of an award, and issues about whether that award should be confirmed or set aside are presented. For these purposes, this leaves the determinations on the 10/10 issue by the First and Second DRBs untouched by the Court. Therefore, the ruling by the Second DRB in its Order #1A that it will not be bound by that of the First DRB on the 10/10 issue will not be disturbed on the present motion.
Further, insofar as the Project Director is concerned, his power to overrule, alter or vary DRB arbitration decisions is limited to those determinations that are contractually non-binding. He cannot, therefore, change the Second DRB’s Order #1A to the effect that the opinion of the First DRB on the 10/10 issue is not a binding order affecting the Second DRB.
The Project Director can, however, overrule, alter or vary the Second DRB’s non-binding Order #1B; and he has done so with his September 30, 2000, Decision. PKC, however, has properly brought that action before the Court in case No. 00-5700BLS and, therefore, the Project Director’s Decision is not final and binding, and further judicial review is not barred. Such judicial review is subject to the application of G.L.c. 30, Sec. 39J. This Court, therefore, may only look — initially, at least — at the record to determine whether the September 30, 2000, decision was made in the absence of substantial evidence, in violation of the law, in bad faith, fraudulently, arbitrarily, capriciously, or outside the Project Director’s authority. If none of the latter is apparent, then the decision must stand as rendered.
Here, the Project Director’s Decision on the 10/10 issue is detailed and carefully written. It is clearly within his contractual authority to make such a decision. Nor can there be any question about an absence of substantial evidence, the decision having been made basically on an assessment of the contract documents. Nothing in the Project Director’s Decision reveals an improper application of the law relating to contracts, either as to interpretation or substance. Further, the decision, on its face and when read against the record of two separate DRB’s reaching diametrically opposite results on the same 10/10 issue, cannot, having come out the same as one of the two, be said to demonstrate bad faith, fraud, arbitrariness or capriciousness. There is no apparent basis for this Court to interfere with the decision.
Next, the Court addresses the issue of whether, if at all, it should at this time explore the reach of the Project Director’s Decision on the 10/10 issue — e.g., whether it is final, binding and conclusive on the binding DRB process and whether it applies to all disputes before the DRB — and thereby direct the Second DRB, or any later DRB, to act consistent with the Court’s view, as opposed to the DRB’s own reading and application of that decision. Because of the well-settled law limiting intervention by judges in arbitration proceedings, this Court believes that to opine on the project Director’s ruling on the 10/10 issue would result in injecting itself into the midst and heart of the arbitration process, a place where it does not belong. It is up to the DRBs, during the conduct of their binding dispute resolution proceedings, to interpret and give such weight as may be appropriate to the Project Director’s Decision within the context of whatever dispute maybe being determined.
The entire process for dispute resolution, including the DRB’s authority, is derived from the Cl 1A1 Contract and the binding DRB agreement thereunder. Thus, the DRBs can only follow those particular mandates imposed therein. In this case, the scope of the binding DRB agreement reads:
The DRB shall adjudicate any disputes between the Parties concerning claims listed in Exhibit 1 pursuant to the procedures set forth in the “Amended Meeting Rules,” a copy of which is attached to this agreement as Exhibit 2.
This is a classic broad arbitration clause mandating what it is that the DRBs will arbitrate. This is the kind of contract language that must be construed as broadly as it was intended. Barletta v. French, 34 Mass.App.Ct. 87, 93 (1993); Carter, Moore & Co. v. Donahue, 345 Mass. 672, 676 (1963). The language covers “any disputes.” The only, but significant, limitation is that the matters to be resolved are those listed on Exhibit 1. In particular, the DRBs are given authority “to adjudicate any and all . . . disputes including, but not limited to, any dispute concerning PKC’s claim for delay, inefficiency and/or other overall impact costs.”
Those claims that fall within the limits of Exhibit 1 to the binding DRB agreement are not said to be limited by decisions of the Project Director. Also, the Project Director’s decisions, under the contract, are final and binding only if, once made, PKC fails to timely deliver a written notice of a claim. The specific contract language reads:
If the Contractor does not appeal . . . within such ninety-day period . . . the Project Director’s Decision shall be final and binding and further administrative or judicial review shall be barred. If an appeal is timely made, for the purpose of subsequent administrative or judicial review, MGL Chapter 30, Section 39J shall apply.
As noted earlier, a timely appeal has been made by PKC. There is, therefore, no present binding aspect to the September 30, 2000, decision. But before this Court reaches the merits of case No. 00-5700BLS, the Second DRB’s decision of the issue ought to be presented for confirmation or set-aside of the award therefrom. It should not be reached on the present motion for partial summary judgment.
*569 ORDER
For the foregoing reasons, the Court DENIES the CA/T Project’s motion for summary judgment seeking a declaration as to Count I of the amended complaint in case No. 00-4096 BLS and as to Count I of the complaint in case No. 00-5700 BLS.

 The “Engineer” under the Cl 1A1 Contract is defined as the Project Director.

 This is the phrase used in the BECo decision. In the Subaru decision it is worded as “DRB DETERMINATION; COMPENSATION FOR EXTENSION OF TIME." The substance that follows is identical; consequently, the Court assigns no significance to the slightly different titles.

 The Court is advised by PKC that the Second DRB has proceeded to hear its Omnibus Time Claim, and that those hearings have now concluded. An award is said to be expected during the week of September 3, 2001. Although urged by PKC to do so, this Court has concluded that it should proceed with this decision and not await the Second DRB’s determination of the Omnibus Time Claim. The role of the Court on this motion for summary judgment is quite different from the role of the DRB on a binding claim before it.

 This Decision is 13 pages long, double-spaced, and contains a full analysis and explanation for the conclusions reached.